By the Court. Slosson, J.
If the plaintiffs are entitled, on the allegations in this complaint, to any relief against the defendants, or either of' them, the demurrer as to such defendants is not well taken, and was properly overruled.
To determine this question, it is necessary, in the first place, to ascertain what rights in the case, as made by the complaint, Goodyear or Judson acquired under the agreements of the 23d of May and the 5th of September, 1850, and the 12th of November, 1851, and whether the interference of this court is necessary or proper to protect or perfect those rights.
These instruments should be read in the light of facts averred in the complaint, and admitted by the demurrer to be true.
When the agreement of the 23d of May was executed, Goodyear was the owner, by purchase, of Chaffee’s original patent, and had long been in the use of it, by giving to the licensees of his own patent the privilege, without additional cost, of using it in connection with his own patent. Chaffee was, at this time, in Goodyear’s employ, and continued so until after the extension of the patent was obtained.
Judson was, at this time, the attorney, counsel, trustee, and managing agent for Goodyear and his licensees, and had an interest in the latter’s patent for vulcanized rubber. He had also in his hands a fund, contributed by Goodyear’s licensees, to defray the expenses attending the extension pf the latter’s patents, and *160 out of which it was understood by Chaffee, Judson, Goodyear, and his licensees, that the expenses of procuring the extension of Chaffee’s patent should also be paid.
Chaffee’s original patent was to expire on 31st of August, 1850.
Goodyear, Judson, and the licensees having concluded to apply for an extension of Chaffee’s patent, Goodyear and Chaffee entered into the agreement of the 23d of May, 1850, and Judson then made the application, acting, as Chaffee well knew, for Goodyear and his licensees.
This agreement recites the sale by Chaffee to Goodyear for $3,000, payable as thereinafter provided, of an invention of his in respect to the mixing of shellac with india-rubber, &c., and stipulates for an application with, or on behalf of, Goodyear, for a patent for such invention, at Goodyear’s expense. The $3,000 was to be paid as follows: $1,500 when the patent for the shellac invention should be issued, or, if the extension of Chaffee’s patent for the india-rubber machinery should be granted before that of the shellac invention, then the $1,500 was to be paid on the assignment to Goodyear of the said patent for machinery, and the other $1,500 within one year from the date of the instrument; but if neither patent should be obtained, (meaning, probably, within the year,) then the payment of the first $1,500 is also deferred to the end of the year.
Chaffee then covenants absolutely, that upon the issuing of one or both of the aforesaid patents for shellac and machinery, he will immediately assign them to Goodyear; and it is then provided that if, at the time of the assignment of said patents, or either of them, (as I understand the expression, “at the time aforesaid,”) the $3,000 shall not have been paid, the amount shall be secured by a lien on the patents, if both were obtained, or wholly on that for shellac, if the patent for'the machinery should not be extended, such lien to be created by a transfer, by Goodyear to Chaffee, of his interest in the patent, so that he, Goodyear, could not give licenses until the whole amount was paid.
It is then provided that Chaffee might reserve to himself the right to use the india-rubber machinery in any business which he might thereafter carry on.
I have recited this instrument somewhat in paraphrase, but strictly according to my interpretation of its meaning.
*161 It is a remarkable circumstance, that the $3,000 seems to be treated in this instrument as the consideration for the assignment of the shellac patent only, and is agreed to be paid for that patent whether the patent for the machinery was extended or not, though the periods of payment are regulated in respect to the time when the extension of the latter patent might be procured. Were not the instrument under seal, a question might be raised, whether there was any consideration to support the covenant to assign, which is a covenant to convey a valuable right and property wholly belonging to Chaffee, and in which Goodyear could acquire no interest, except as purchaser, since it is well settled under the law of 1836, that the right to the extension belongs solely to the original patentee, and not to his assignee of the first patent, whose rights terminate with the termination of the original term. The extension is for the benefit of the patentee, and, in every sense, is a new patent. Wilson v. Rousseau, 4 Howard, 646.—(Woodworth’s patent.) Curtis on Patents, § 118.
The instrument is, however, under seal; and, apart from that, I am not prepared to say, in view of the inartificial and confused form of the instrument, that the consideration expressed in it was not intended by the parties to apply to both patents, and, in the consideration of the case, shall assume that it was.
What, then, are the rights created by it in Goodyear ? Clearly a right, as purchaser, though resting in covenant, to the extended patent when obtained. There are no words of conveyance in presentí, because the subject was not in existence, but there is a clear and absolute covenant by Chaffee to make an immediate assignment of the patent whenever it should be issued.
This operated, in equity, to transfer the whole of Chaffee’s interest in the anticipated patent, to Goodyear, saving only the right reserved to the former to use it in his own business; and if the rights of the parties depended now solely on that instrument, a court of equity would compel a specific performance of the covenant, if it became essential to the protection of Goodyear’s rights, that he should be invested with the legal title to the patent. (2 Story’s Eq., § 722; Field v. Mayor, &c., of New York, 2 Seld., 179.)
The agreement of the 23d of May was in force at the time the extension of the patent was obtained, (31st of August,) and when the agreement of the 5th of September was executed.
*162 The new patent was, of course, in the name of Chaffee, arid he was its legal owner. Judson called upon Chaffee, on the return of the latter with the new patent Rom Washington, and, without the knowledge of Goodyear at the time, procured Rom him the agreement of September the 5th, being a deed-poll by Chaffee under seal.
How are Goodyear’s rights affected by this instrument? As he was no party to it, it is clear that they could not be affected at all, except by his 'subsequent acquiescence in it, and then the nature and conditions of that acquiescence became material.
But, apart Rom his acquiescence, are his rights varied or affected by the terms and stipulations of the agreement itself?
This instrument reveals the existence of another agreement between Chaffee and Goodyear, which does not appear to have been in writing, and which probably was subsequent to the agreement of the 23d of May, by which Goodyear was to be at the expense of applying for the extension, and was to mahe an allowance to Chaffee for the use of the patent, if extended, at the rate of $1,200 a year, payable quarterly, during that or any future extension. It recites this outside agreement with Goodyear, and then Chaffee, in consideration of it, and also in consideration that the expenses attending the procuring the extension had been large, and could not then be ascertained, and in consideration that the patent, when extended, (that is, the original patent,) stood in the name of Goodyear, and was held for his benefit, and that of his licensees; and in consideration that Judson had had the management of the application for the extension, and had paid, and became hable to pay, the expenses thereof, and had agreed to guarantee to Chaffee the payment of the annuity at the quarterly periods mentioned in the agreement, and with the declared intent to place the patent so that, in case of his (Chaffee’s) death, or other accident or event, it might enure to the benefit of Goodyear, and those who held a right to the use of said patent under and in connection with his licensees, according to the understanding of the parties, nominates, constitutes, and appoints Judson his trustee, and attorney irrevocable, to hold the patent and have the control thereof, so that no one should have a license to use said patent or invention; etc., other than those who had a right to use the same when said patent was extended, without Judson’s written consent. Judson then, *163 for himself and those interested, (which expression can have reference only to Goodyear and his partners in interest and licensees,) agrees with Chaffee that all the expenses attending the extension shall be paid without charge to him, and that the annuity shall be paid as before stipulated; and that he, (Judson,) and those for whom he was acting, (none other than Goodyear and his licensees, etc.,) should be at all the expense of sustaining and defending the patent; and then follows the reservation stipulated for in the agreement of the 23d of May, to wit, that Chaffee was to have the right to use the patent and improvements in any business which he might carry on.
It cannot be denied that this instrument .is, on its very face, a full and clear recognition by Chaffee and Judson of the right of Goodyear, as subsisting and paramount, and to be secured in all events.
It changes the consideration from $3,000, as an out-and-out payment, to an annuity of $1,200, and this is expressed to be for the use of the patent. Does that change Goodyear from a purchaser to a mere licensee ? I speak now upon the face of the instrument. If by the words, “ according to the understanding of the parties interested,” in the clause declaring the intent of the instrument, among other things, to be, that in the event of Chaffee’s death, etc., the patent should enure to the benefit of Goodyear, etc., be meant the agreement of the 23d of May, (and there is no evidence of any other understanding,) then clearly Goodyear is recognized in this instrument as still invested with all the rights he acquired under the former agreement, and there are other clauses which favor the same view. Then how does it stand on Goodyear’s acquiescence in this agreement?
When first informed of the execution of the instrument, a few days afterwards, Goodyear objected to it, and only assented to it upon the assurance, by both Chaffee and Judson, that it was to operate as a fulfilment of (if not a substitution for) the agreement of the 23d of May, and to secure the extension to Goodyear and his licensees, etc., according to the design of the agreement of the 23d of May, and he then acquiesced in it as a substantial, though not literal, performance of that agreement.
In what respect, then, are the rights of Goodyear affected by this agreement, as thus assented to ?
I answer, only as to the mode of enforcing and securing them.
*164 He cannot, perhaps, now ask for the transfer of the legal title to the patent directly to himself, as he might have done under the agreement of the 23d of May.
A trustee, or a person designated by that title, has intervened, and the next question is, What title the trustee has, and whether Chaffee’s rights are perfectly secured under the instrument as it stands, and which both Chaffee and Judson declared to Goodyear was intended to secure him his rights, under the agreement of the 23d of May?
The legal title is not in terms transferred to Judson, yet he is declared to be a trustee to hold the patent, so that in the event of Chaffee’s death, or other accident, it might enure to the benefit of Goodyear. Judson is to have the control of the patent, so that no one could obtain a license without his written consent. From this restriction, however, is excepted Goodyear, and his licensees, who had the right to use the same when the patent was extended, and to whom the instrument concedes the right to continue the use without a fresh license.
I consider the intention of the agreement of the 5th of September to be, to secure to Goodyear the benefit of the agreement of the 23d of May, but in a different form than that contemplated by the last-named agreement, to wit, by the interposition of a trustee, or person clothed with that character, instead of by a direct assignment of the patent to him; that an additional motive for this intervention of a trustee was, to give Judson, who was responsible for the expenses and annuity, a control over the granting of the licenses, for his own protection, and that the legal title was to be reserved in Chaffee, as a security, in addition to the personal undertaking of Judson, for the payment of the annuity and expenses.
This instrument is not, as is contended by defendants, a power of attorney merely, and revocable at pleasure; the intent of the instrument would be fully expressed, though perhaps not effectuated, without the words “ attorney irrevocable.”
Yet the words are not without significance; as it was intended that Judson should act as trustee, yet without the legal title, a power to act is superadded, and perhaps necessarily so, but the power follows the nature of the intended trust, and is auxiliary to it and in aid of it, so that if the trust is irrevocable the power is equally so. Moreover, Judson was personally responsible for *165 the payment of the expenses, and the annuity, and this instrument was, in one sense, a security to him in respect to those obligations on his part; this would make it, viewed as a power of attorney strictly, apart from the trust, a power coupled with an interest, and being by its terms declared “irrevocable,” it becomes in fact so. (Story’s Ag. §§ 476-7.)
In no respect,- therefore, was this a revocable power, at the pleasure of Chaffee, nor, in my judgment, was it revocable, by reason pf any stipulations contained in it, in the nature of conditions precedent or subsequent; the payment of the expenses and annuity was a personal obligation on the part of Judson, and his failure to comply with the stipulation in that respect certainly could not, of itself, give to Chaffee the right to abrogate the contract on his own motion. What a court of equity might have done on an application to it, founded upon the default, is another question.
We have,- then, this singular state of things under the agreement of the 5th of September: the legal title in Chaffee, the equitable title or beneficial ownership in Goodyear, and some kind of title, either as trustee or attorney irrevocable, for the purposes of a trust, in Judson, with a power on the part of Chaffee and Judson to grant the licenses.
Are Goodyear’s rights secured under this instrument according to the declared intent of the instrument itself, and of the parties when his assent to the instrument was procured, or is the instrument, in its present form, inadequate to such declared intent, oris any other instrument or transfer necessary to effect it, and which it is in the power of this court to award?
These are questios to be hereafter considered.
Before proceeding, however, to that subject, it is necessary, as bearing upon the plaintiff’s rights, to consider the agreement of the 12th of November, 1851.
This, also, was entered into between Judson and Chaffee without Goodyear’s knowledge, or, as far as appears from the complaint, without his having in any way acquiesced in it, other than as. a recognition of the agreement of the 5th of September.
The agreement of the 5th of September had provided for the payment of $1,200 per year to Chaffee, as the consideration for the use of the patent, but, in fact, he had" been paid $1,500 a year *166 from that time, and one object of the November agreement appears to have been to modify the prior agreement in this particular, and to bind Judson personally to its payment. Another ob-. ject was to enable Judson to exact from Goodyear’s licensees a proportional payment of the expenses of procuring the extension of the patent; and a third was to authorize Judson to use Chaffee’s name in suing for infringements, which would seem to be necessary from his retaining the legal title; but such suits were to be at his, (Judson’s,) expense, who was to hold Chaffee harmless from the costs, and was to have all the benefits derived from the litigation. The whole agreement is a mere modification of that of September the 5th, which it distinctly recognizes, and in no way impairs, or undertakes to impair, the rights of Goodyear, which it, on the contrary, expressly alludes to as subsisting, and in fall force.
These are all the instruments which go to create or affect the rights of the plaintiffs in this extended patent, and what is the effect of the whole ?
My conclusion is:—
1st. That Goodyear, for himself and his licensees acquired, under the agreement of the 23d of May, the entire beneficial interest and equitable title to the extended patent, and that that interest has been in no degree divested or impaired by the subsequent agreements, and that under that agreement standing alone, he would have been entitled to have compelled, in this court, an assignment directly to himself of the patent when extended, upon the tender or offer to pay the $1500.
I do not consider his right to an assignment to have been lost or impaired by his not having made such tender. The assignment and payment were, by the terms of the agreement, to have been made simultaneously on the procurement of the patent, which was on the 31st of August; but before this could be done, or at any rate, before Goodyear could within a reasonable time have made the tender, the agreement of the 5th of September, between Chaffee and Judson, was entered into, by which a new mode of payment was adopted, if, in fact, it was not adopted earlier by the agreement referred to in that of 5th September.
2d. 'That under the agreement of the 5th of September assented to by him, he has a right, through the medium of Judson as *167 trustee, to have the rights acquired by Mm under the agreement of the 23d of May as effectually secured to Mm as they would have been by a direct assignment of the patent to himself, consistently with the security created by said agreement m favor of Chaffee for the payment of the expenses and annuity, and in favor of Judson in respect to his personal undertaking for the same expenses and annuity.
To recur, now, to the facts of the case. It appears from the complaint, that Judson, after the 1st of December, 1852, suspended the payment of the quarterly proportions of the annMty stipulated for in the agreement of the 5th of September, (and payable first of March, June, September, and December,) with the Mtention of inducing Chaffee to renounce his connection with Bourne and Brown, partners of his, under the firm of E. M. Chaffee & Co., and who, it is alleged, were infringers of Goodyear’s patent for vulcaMzed rubber.
On the 18th of June followmg, (1853,) a suit was commenced against this firm on behalf of Goodyear. On the 23d of June, the same month, Judson wrote to Chaffee to draw on him for the arrears of the quarterly payments which the latter did not avail himself of. Chaffee was apprised of the commencement of tMs smt, and, as it is alleged, then colluded with Day, defendant M this action, to sell to him the title to the patent.
On the 1st of July following, Chaffee formaEy, by letter to Judson, revoked the letter of attorney (so called by Mm) of the 5th of September and 12th of November, on the ground that he, Judson, had failed to perform and keep Ms part of the agreement, and on the 1st and 6th of July, two mstruments were executed between himself and Day, being m substance a purchase from, and sale and transfer by, Chaffee to Day, for $11,000, of the Mvention and patent for the residue of the seven years.
In the Mstrument of the 1st of July, which is the agreement of purchase, the parties expressly recite that they both “ claim and believe that Judson, by default on his part, had waived and surrendered all rights, if any, that he might have had, under any and all contracts made with Chaffee.”
On the 2d of July, Day gave notice of his purchase to Judson, and after the formal transfer to him of the 6th of July, (how soon after does not appear,) commenced over a dozen smts against Good *168 year’s licensees for infringement of Chaffee’s patent, the defence of which, at great expense, devolves on Judson.
• It is alleged that Day purchased with notice of all three agreements, and fraudulently, and it is contended by the complaint, that the utmost he acquired by the purchase was Chaffee’s right to the annuity.
If the allegations of this complaint are true, and they must, under this demurrer be held to be so, so far as they are material, there can be but little doubt that the whole transaction between Chaffee and Day was collusive and fraudulent as against Goodyear and Judson.
We now come to the question which must determine the sufficiency of this demurrer. Does the complaint make out a case which, in any aspect of it, entitles the plaintiffs to the protection or interference of this court? Are Goodyear’s rights, as thus shown to exist, sufficiently protected and secured under the agreement of the 5th of September as it stands, without the aid of any additional muniment of title or other protection, and have the plaintiffs any rights, as against Day, as an interloping purchaser with knowledge of, and in fraud of the rights of Goodyear and Judson which this court can enforce ?
The question is not what relief ought to be administered in the case, which can only be determined on the final hearing, but what relief may be administered on the facts shown and admitted by the demurrer; and I do not think it need take long to answer the question.
And, first, I consider the transfer to Day as utterly void, as against Judson and Goodyear, and his licensees, and that it is competent and proper for this court so to- adjudge it, and to require the instrument of transfer to be cancelled, or a release executed by him, unless the right to the annuity shall be deemed to have passed by it; and, in that case, to restrain by injunction the exercise by Day of any right of license, or any other right, under the transfer, other than the right to receive the annuity.
This outstanding title in Day constitutes a cloud on Goodyear’s title, may be used to his abuse, impairs the value of his rights, subjects him and his licensees to perpetual litigation, and it ought, in conscience, to be put out of the way, or restricted in its exercise by the injunction of the court. (2 Story’s Eq. §§ 694-5.)
*169 In the second place, I consider on the case as made, that Goodyear has the right to call on this court, in case the transfer to Day should be wholly set aside, to compel a transfer by Chaffee to Judson, with or without Day as a party, as the court may be advised, of all his remaining interest in the patent, so that Judson’s title as trustee for Goodyear’s benefit shall be perfected, on such terms and with such provisions as shall give to Chaffee and Judson all the security which the agreement of the 5th of September was intended to give them, in respect to the expenses and annuity; nor am I prepared to say that the court may not decree an absolute transfer of the whole legal title to Goodyear himself on such terms of security, as to the annuity and expenses, as may be deemed proper, in case, in its judgment, that should be the most effectual mode of securing the rights of Goodyear, provided Day shall not, by the transfer to him, have acquired the right to the annuity. We fully concur in most of the views expressed by Hoffman, J., in giving his judgment at Special Term, and affirm his judgment, overruling the demurrer, with costs.
I do not wish to be understood that both my brethren concur in all the views I have expressed, in respect to the construction of the instruments in question, especially that of the 5th of September ; but in the result, as to the rights of Goodyear under the instruments, and the allegations in the complaint, and the relief to be administered by the court, they do concur.
The judgment at Special Term must be affirmed, with costs.