By the Court:

Monell, J.
The printed case with which we have been furnished upon this appeal does not contain a copy of the judgment, and we are, therefore, unable to ascertain precisely what it contains. It appears from one of the moving affidavits that judgment final for the defendants had been entered, but nothing further is stated of its contents; and we cannot, therefore, say whether it contains any provisions which will aid the defendants in reversing the order in this case. On the contrary, every presumption is in favor of the correctness of the order, and we are, therefore, bound to assume that the judgment dissolving the injunction did not contain any provision or direction for ascertaining or for paying these damages.
This leaves the question of jurisdiction to depend upon the power of the court to enforce, by order, the payment of injunction damages, after final judgment in the action, where such judgment contains no provision directing their payment.
Such a provision in the judgment, if erroneous and not within the power of the court to make, could only be corrected on appeal, and until corrected could probably be enforced.
*615 This was not a proceeding to reach in any shape the liability of the sureties upon the undertaking given by the plaintiffs. In their case the liability does not attach until final judgment, that being expressly provided for in the instrument they have executed, and nothing need be contained in the judgment, either to declare their liability or to provide for its enforcement. It is enough that by the final judgment it is adjudged that the plaintiffs were not entitled to the inj unction. Thereupon the court may proceed to ascertain the damages, by reference or otherwise, and the report of the referee will be conclusive upon the sureties, of the amount for which they are liable (Methodist Church of N. Y. v. Barker, 18 N. Y. R., 463). Such liability, however, cannot be enforced by order, the only remedy being by action against the sureties upon the undertaking, in which action the amount ascertained by the referee will be conclusive upon the sureties (id.).
In the case just cited it is distinctly held that, as regards any proceeding to reach the liability of sureties, a final judgment is no bar to a reference to ascertain the damages; for the reason, as heretofore stated, that such liability does not attach until final judgment.
The liability of sureties is wholly upon a written instrument and must be ascertained from a construction of the instrument itself. If they undertake to pay the damages, it is only after a final judgment against their principal, and there is therefore no analogy whatever between this secondary liability of the surety and any primary liability there may be of the principal. In the one case such liability rests upon the written engagement of the surety; in the other upon the power of a court of equity to award damages against a party whose injunction has caused such damage.
There is nothing, therefore, either in the nature of the sureties’ liability, or in the mode in which it may be enforced, which can aid us in determining the questions in this case, which depend for their solution upon what shall be ascertained to be the power of the court, and not upon the agreement or undertaking of the party.
*616 It therefore becomes necessary to inquire whether a court of equity may award damages against a party who has improvidently engaged its restraining power over an adversary, after the court has removed such restraint, and determined that the party was not entitled to it. It may be that the court has such power, but a careful examination of the subject will lead us, I think, to a different conclusion. An injunction order is not a writ of right. The granting of it is entirely in the discretion of the court, and it can be properly granted only when the cause of the plaintiff’s action, or the facts upon which his application is founded, are such as to entitle him to the relief sought. The sufficiency of such cause of action or facts is to be judicially determined, and, although the determination may be afterwards reversed, it does not, and I think should not, follow that the finally unsuccessful party should suffer for the error of the court.
The 31st rule of the late Court of Chancery, to which I shall presently more fully refer, and the provision in the Code requiring security, apply only to injunctions issued upon ex pa/rte applica- ■ tions, and such applications can be made only before the defendant has answered (Code, sec. 221). Where the court, upon a hearing of both parties, grants an injunction, either perpetual or pendente lite, no undertaking or security on the part of the plaintiff is required. Yet the court may finally adjudge that the plaintiff was not entitled to the injunction.
And such a case may fairly test the question. A case of no preliminary or expa/rte inj unction, but an injunction granted at the hearing without an undertaking, which is afterwards vacated and get aside by the court.
Can the court, in such a case, in its judgment dissolving the injunction, award damages to the defendant against the plaintiff?
The power of a court of equity to award, damages is very limited, and is exercised only in exceptional cases. The general rule is that such courts will not entertain actions for compensation or damages, except as incidental to other relief, and where the subject is of such a nature that an adequate remedy at law is not provided.
*617 And sometimes where having obtained jurisdiction for one purpose that court will, as an incident to such purpose, give indemnity by the way of damages to prevent circuity of action.
But when the remedy at law is ample, no power is vested in eqnity to make recompense in damages.
The rule in chancery, to which I have referred, was framed by Chancellor Walworth in 1830, and by him made, for the first time, a rule of that court. He was undoubtedly led to the adoption of the rule by his conviction of the want of power in the court to give an injured defendant any indemnity; and as vice-chancellors and masters in chancery, whose offices were created under the constitution of 1821, were empowered to grant ex jpa/rte injunctions, it may have been thought that the discretion of those officers might sometimes be unsoundly exercised.
After the incorporation of this rule into the system of equity practice its observance was strictly enforced by the chancellor, which illustrates its importance in his eyes.
Hence, in Loveland v. Burnham (1 Barb. Ch., 65), where' a master had approved of a bond in the minimum fixed by the rule, the chancellor dissolved the injunction on the ground of the insufficiency of the security. The chancellor said, “ The officer allowing the injunction should always require a bond for a » larger sum than §500, where, from the nature of the case, there is reason to suppose the damages occasioned by the injunction, if it should continue until the termination of the suit, will exceed the minimum fixed by the rule.”
And the codifiers and the legislature, in adopting so valuable a precedent into the Code, were doubtless impressed with its importance, especially in view of the greater facility in obtaining injunctions under the judiciary system of 1846.
The views expressed by the chancellor in the case of the Cayuga Bridge Co. v. Magee (2 Paige, 116), were pointed and to the purpose, illustrating the propriety of the rule, under what he believed to be the total want of power in the court to make recompense for damages sustained by reason of an injunction.
In that case, the injunction had suspended the proceedings of *618 the defendants in the erection of a bridge across the Seneca river, and they had sustained serious loss in consequence of the restraint. The case came before the chancellor upon bill and answer, and in dissolving the injunction.and dismissing the compaint,he said:
“I regret that in this case it is not in the power of the court to remunerate the defendants for the loss they have sustained. The injunction has compelled them for a time to suspend.their operations to the great damage of their work, which was partially completed. * * * The new rules of the court (rule 31) have provided for cases of this kind hereafter, by requiring a bond from the complainant to pay the damage sustained by the defendant in consequence of an injunction if the justice of the case turns out to be in favor of the latter.”
And in another case (Loveland v. Burnham, ubi supra) this want of power is clearly to be implied from the object, as there stated by the chancellor, for adopting the 31st rule. He says (p. 67): “ The obj ect of this rule was to afford to the party enj oined full and ample security for all damages he might sustain by reason of the allowance of an injunction against him without giving him an opportunity of being heard in opposition to such allowance. And whenever the injunction is issued without the requisite security to indemnify the defendant against such contingent damage, it will be the duty of the court to set aside the injunction, with costs.”
The chancellor had previously enjoined the exercise of a sound discretion in granting preliminary injunctions (N. Y. Printing and Dyeing Est. v. Fitch, 1 Paige, 97), and frequently afterwards recognized the importance of the rule which he had adopted (see cases hereafter cited). And this court at an early day established the requirements of the practice in regard to the security on injunctions, by providing (Sheldon v. Allerton, 1 Sandf., 700), that the plaintiff’s own vmdertahing would not be received unless he would justify as being a freeholder or householder, and worth double the sum specified, etc.
And a general rule, court rule 6, requires sureties who are to be approved by a judge to justify in all cases.
*619 The rule in chancery, as well as the Code, allows the bond or undertaking of the plaintiff only to be received and without surety. But, if the court can award damages in the action, then the obligation of the plaintiff without surety does not add to the indemnity of the defendant, and the rule or the provision of law which allows of the individual bond or undertaking of the plaintiff must have been conceived in the belief that the court possessed no other means of protecting the defendant.
This is farther illustrated in Sullivan v. Judah (4 Paige, 444), where the chancellor again assigns, or perhaps, more properly speaking, implies, as a reason for adopting his rule, that it was one of those cases in which the master should have required security from the complainant before he allowed the injunction, at leant in the complainant's own bond.
Why in the complainant’s own bond, if the court could award damages against him in the action ?
In a later case the chancellor again says (Carroll v. Sand, 10 Paige, 298), the object, of allowing injunction masters to dispense with sureties in certain cases, was to enable the complainant to give his own bond, when his personal responsibility, in the opinion of the master, would afford ample protection to the defendant.
Although these cases do not, perhaps, hold in express terms that a court of equity has no power to award damages, yet the total want of any such power is plainly to be inferred, as well from the expressed regret of the chancellor that “ it was not in the power of the court to remunerate the defendant ” as from the necessity which led to the adoption of the 31st rule and the similar provision in the Code.
The bond required by the rule in chancery and the undertaking required by the Code of Procedure afford, therefore, the only protection to a defendant against the consequences of an injunction. Such undertaking may be signed by the plaintiff only, or may be on behalf of the plaintiff and signed by sureties only, or it may be signed by the plaintiff and sureties (Leffingwell v. Chave, 19 How. Pr. R., 54). In either case, the undertaking is *620 the only security and protection to the defendant for his damages by reason of the injunction.
In a case, therefore, where the undertaking has not been signed by the party, but by other persons, the court has no power, either by its judgment or otherwise, to award damages against the party; nor can such damages be awarded against the sureties in such action or judgment. The undertaking is the onbg security, and when a final judgment is rendered, an action at law may be maintained upon it; and that is the only remedy, whether it is the undertaking of the plaintiff alone, or with sureties, or with sureties alone (Methodist Church v. Barker, supra).
I do not, therefore, agree with the learned chief-justice that ' upon the dissolution of an injunction during the progress of a cause, before final judgment, it is competent for the court to ascertain the defendant’s damages, and require their payment by order or otherwise. And I have also endeavored to show that he is also in error in supposing that such damages can be awarded in and by the final judgment. The power to do so does not exist, and the defendant can look only to the undertaking for his indemnity, which after judgment in the injunction suit he can enforce in an action at law.
We were referred by the appellant’s counsel to some cases which he claimed sustain the power of the court.
Askins v. Hearns (3 Abb., 184) was an undertaking upon an order of arrest, and the question was whether the undertaking should have been executed by the plaintiff. It was held it need not be. But the court, in its opinion, say the sureties are an additional protection, and that the plaintiff is also liable,.although not a party to the, undertaking. And in Patterson v. Bloomer (37 How. Pr. r., 450, and 38 id., 280; 7 Abb., N. S., 376) there is a dictum to the effect that the court may make an order ■ against a plaintiff who has not signed the undertaking, directing him to pay the damages.
It may be enough, perhaps, to say that the undertaking in the first case was given in an action at la/w, where the power to give damages is different from the power possessed by courts of equity, *621 and it may be that, in an action for a tort, a court of law may award damages against a plaintiff, when a court of equity would possess no such power. But I do not think it can.
The latter case, however (Patterson v. Bloomer), was an undertaking in an injunction suit, not signed by the plaintiff. The plaintiff had obtained leave to discontinue, without prejudice to the defendant’s rights on the undertaking. The defendant thereupon moved for a final adjudication and a reference to ascertain his damages. Upon the referee’s report coming in, it was finally adjudged that the plaintiff was not entitled to the injunction, and an order was made “directing the plaintiff and his sureties to pay the amount found by the referee.” Upon this order a judgment was entered, execution returned unsatisfied, and a supplemental order for the plaintiff’s examination was obtained.
The motion was to set aside the judgment and order, which was granted; and upon that motion the remark was made, that the court could make the order directing the payment of damages, which order could be enforced by attachment.
But I do not think the question was carefully considered in either of the cases cited. It was not involved in them, and no reference is made to any adjudications supporting their views. And I think.I have shown that they cannot, upon a careful examination of the subject, be supported. And certainly the case of The Methodist Church v. Barker (ubi supra) is a direct authority that, as respects the sureties, the only remedy is by action upon the undertaking.
Even the power to ascertain the damages is not inherent in the court, but is derived from the Code, which provides for the mode of their ascertainment. This conferred power was recognized, under the rule in chancery, in Garcie v. Sheldon (3 Barb., 232), where the court say that, without the clause required to be inserted in the bond, consenting that the damages shall be summarily ascertained upon a reference, the court would have no jurisdiction to direct such a proceeding.
The other cases to which we were referred do not bear upon the questions I have been discussing.
*622 From the views which I have expressed, it follows, if they are correct, that the ground upon which the decision below was placed, namely, that provision for these damages should have been made in the judgment, cannot be sustained.
But as I think a different reason exists for sustaining the order appealed from, it must be affirmed.
The conclusions are: 1st. The court has no power by its judgment in the action to award damages against the plaintiffs. 2d. The only indemnity to a defendant in an injunction suit is the undertaking required by the Code. 3d. The liability upon the undertaking arises only after final judgment dissolving the injunction. 4th. That after such final judgment the defendant’^ damages may be ascertained by a reference. 5th. That the amount ascertained by the referee is conclusive upon the persons signing the undertaking. 6th. That only an action at law can be maintained upon the undertaldng, in which action the amount ascertained by the referee will be the measure of recovery.
Order affirmed, with costs.