FRANK I. RUE, ET AL. v. L. B. MERRILL, ET AL.
(P. W. Metz, et al., Interveners)
(No. 1650; March 31, 1931; 297 Pac. 379)

For the appellants there was a brief by *C. A. Zaring,* of Basin, Wyoming, and *William E. Mullen,* of Cheyenne, Wyoming, and oral argument by *Mr. Mullen.*

514

For the respondent there was a brief by *D. L. O'Hern,* of Miles City, Mont., and *C. R. Ellery,* of Cheyenne, Wyoming, and oral argument by *Mr. Ellery.*

BLUME, Justice.

This action was brought in February, 1928, by Frank I. Rue and Faie O. Sinclair, as plaintiffs, against the defendants Merrill, Shupak and Brown, to quiet title to certain royalty interests hereinafter mentioned, and to declare a transfer of part thereof, hereinafter also mentioned, to be null and void. Merrill, not being served with process did not appear. Shupak and Brown filed a cross-petition asking that the title to the royalty interests here in dispute be quieted in Brown. The court found in favor of Brown as

against the plaintiffs, from which judgment the latter have appealed. A summary of the facts is as follows:

On March 14, 1921, an oil and gas prospecting permit was issued to Frank I. Rue covering Sections 21, 22, 27 and 28, Twp. 51, R. 100, in the so-called Oregon Basin in Park County, Wyoming. Other permits were issued to other parties and an association of joint adventure or partnership was formed by them—with the interveners herein—finally evidenced by a document dated December 22, 1921, wherein it was agreed that each of them should have a one-ninth interest in and to various permits issued, including the one to Rue, and that they should share equally in the money realized from the sale, lease, royalties and other revenues derived therefrom. This one-ninth interest of Rue was reduced somewhat by transfer made to some of his associates in 1927—aside from the transfer to Merrill hereinafter mentioned—but the details of the transfers to the associates need not be set out. Some changes also occurred among the associates, but that, too, is not important herein.

On January 16, 1923, the plaintiff Rue entered into a contract with the defendant Brown, whereby the former's permit above mentioned was assigned to the latter, Brown agreeing to explore the lands covered by the permit for oil and gas, paying Rue the sum of $1000.00 as a bonus, and reserving to Rue certain royalties, the principal part of which was a royalty of 7½ per cent of all oil and gas produced from the land. The permit was subsequently renewed and extended and finally assigned to one Orchard who developed the land for oil and gas. On the date above mentioned, namely, January 16, 1923, the plaintiff Rue also made a transfer to one L. B. Merrill, of part of his rights in the permit and in the contract with Brown. The transfer is as follows:

"ROYALTY ASSIGNMENT.

KNOW ALL MEN BY THESE PRESENTS, That I, Frank I. Rue, of Basin, Wyoming, for and in consideration of the sum of One Dollar lawful money of the United States

of America, cash in hand paid, the receipt whereof is hereby confessed and acknowledged, and of other good and valuable considerations, have sold, assigned, transferred, and set over, and by these presents do hereby sell, assign, transfer and set over unto L. B. Merrill of Bridger, Montana, an undivided one-half (1/2) interest in and to all Royalty interests or rights that I now own in certain lands covered by certain permits issued to Frank I. Rue, Clyde Atherly, O. J. Rausch, Fred Frisby and William Metz, said lands being situated in what is known as the Oregon Basin near Cody, Wyoming, said permits now being held by an association consisting of the above named persons, together with Arthur Burns, D. T. Hand, V. Rodgers, and L. B. Landfair, said permits being hereby referred to for accurate and complete description of the lands covered thereby, and in which the Royalty interests hereby assigned are contained.

And I do likewise for the same consideration sell, assign, transfer, and set over to L. B. Merrill an undivided one-half (1/2) interest in and to all Royalty rights reserved by me in that certain agreement made and entered into on the 16th day of January, 1923, wherein G. A. Brown of Miles City, Montana, is party of the first part, and I, the undersigned, party of the second part, said Royalty interest being contained in these lands now covered by Prospecting Permit Serial No. 011796, of the United States Land Office, Lander, Wyoming, said Permit and said Agreement being hereby referred to for accurate and complete description of the lands in which the Royalty interests hereby assigned is contained.

Frank I. Rue

Witness: W. E. Holt.

State of Montana, County of Custer, ss.

On this 16th day of January, 1923, before me the undersigned, a Notary Public for the State of Montana, personally appeared Frank I. Rue, known to be the person who executed the within instrument and who acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial Seal on this day and year first above written.

(Seal)                          W. J. Dunnigan
                     Notary Public for the State of Montana
                     Residing at Miles City, Montana.
My Commission expires April 23, 1924.

518

Recorded on the 21st day of June, 1927, at 9.00 A. M.
Bertha M. Rousseau, Register of Deeds
Reception No. 25455.
Recorded in Book 67 on page 411.''

This transfer was placed of record in Park County, Wyoming, on June 21, 1927. The defendant Brown claims to be the assignee thereof by reason of a transfer to him made by the defendant Shupak, dated May 24, 1924, acknowledged on June 1, 1927 and placed of record in Park County, Wyoming, on June 3rd, 1927, and which recites that Merrill made an assignment of his interest to Shupak on April 24, 1924. The assignment from Merrill to Shupak was not, however, produced or shown in evidence.

Rue's associates intervened in this action and certain of the royalty interests above mentioned were set off to them. Their interests are involved in a separate appeal taken by Brown from the decree of the court in favor of interveners. The present appeal involves only the one half of one ninth, or one eighteenth interest in and to such royalties, which the court decreed in favor of Brown, and of which the plaintiffs complain. By quit claim deed executed shortly before the commencement of this action, Faie O. Sinclair acquired all of Rue's interest herein. She makes no claim that she is an innocent purchaser for value. The grounds alleged in the amended petition to set aside the transfer to Merrill above mentioned so far as plaintiffs were concerned are that (1) the same was forged; (2) that the same was without consideration; (3) that it was obtained under duress, and (4) that the interest thereby attempted to be assigned was not assignable. Issue was duly joined on these allegations.

Merrill and Shupak did not appear as witnesses, the reason for which does not appear. The testimony on the issues of the case were briefly as follows: Rue testified that he met Merrill about October, 1922, at Bridger, Montana, and discussed with him the finding of some one who could be induced, in consideration of the assignment of Rue's permit, to explore the land, and that he then promised to pay Mer-

rill for the services which he might render in that connec-
tion everything over and above the sum of $1000 which he,
Rue, would, aside from royalty, receive as a bonus; that
shortly before January 16, 1923, he received a telephone
call from Merrill to come to Miles City for negotiations;
that when he arrived there, Merrill stated that he was un-
able to induce the friends from whom he had found to give
a bonus over $1000, and it was thereupon agreed that Mer-
rill should receive for his services the sum of $250.00 out of
the $1000 which Rue should be offered. A day or so there-
after he met the defendant Brown, the prospective pur-
chaser of the permit. Negotiations were entered into which
resulted in an agreement and an assignment of the permit
to Brown. These papers were signed on the 16th of Jan-
uary, 1923, in Brown's office; when about finished, he was
called into an adjoining room by Merrill, found there on
the table a paper, an assignment of Rue's interest in and
to the permits of his associates, and was asked to sign it;
that he refused; that thereupon Merrill stated that it was
not yet too late "to blow up the deal," and that he, the
witness, thereupon signed the paper at that place; that he
did not go to the office of any attorney where the assign-
ment was drawn up, and that he did not acknowledge it
before any notary; that only the first paragraph of the as-
signment was in the instrument at the time, and the second
paragraph was not in it. W. B. Leavitt, an attorney from
Miles City, testified that he drafted the papers between
Rue and Brown; that they were signed on the afternoon of
January 16, 1923, in Brown's office, just before the bank
closed; that all the parties went to the bank to deposit the
papers in escrow; that just as they were leaving the bank
Merrill said to him, in Rue's presence, that they wanted
another instrument drawn; that, accordingly, he, Rue and
Merrill went to his office, upstairs, both of them telling him
what the instrument was to be; that Rue did not then have
the names of his associates; that he went out, was gone a
few minutes and came back with these names; that he, the

witness, drafted the instrument in triplicate, Rue and Merrill each receiving a copy; that when it was ready, they all went to the office of W. J. Dunnigan, across the street, where the instruments were signed and acknowledged by the parties; that there was no alteration made in the instrument thereafter and that both paragraphs were inserted before they executed. W. J. Dunnigan testified that the instrument, as it appeared in evidence, was acknowledged before him, the parties coming over to his office, across the street, as testified to by Leavitt.

It further appears that the permit above mentioned, after extension, and on May 28, 1927, was assigned by Brown to Charles E. Orchard, "subject to the delivery to the said Frank I. Rue, the permittee above named, of 7½% of all oil and gas produced" etc. Orchard testified that before he received the assignment, Brown claimed to be the owner of Rue's interest in the permit; that the assignment was submitted to the department of the interior, and that no account of Rue's assignment was mentioned, because the department is not interested in any royalty holders other than the one who originally assigns the permit. A few additional facts will be mentioned later.

1. Counsel for plaintiffs say that they cannot understand how the court could have found in favor of the interveners and against the plaintiffs. The court evidently found that at the time of the transfer above mentioned to Merrill, Rue was a partner of, or joint adventurer with, eight associates, so that he had a one-ninth interest in and to the permits in question, including his own, and that in view of the knowledge of that limited interest by the purchaser, he could not transfer to Merrill more than he owned. We have upheld that view in a separate opinion. But simply because Rue could not convey the interest of his associates was no hindrance to him to convey the interest which he actually owned. In 18 C. J. 291, it is said that "where a deed purports to convey the entire title, but the grantor is not the owner thereof, it will pass such interest as he possesses."

The same rule exists as to mortgages (41 C. J. 476-477), and we see no reason why that rule should not apply to a transfer such as is involved in this case, and if Rue in fact attempted to convey more than he possessed, it would not follow that he transferred nothing. He attempted, by the second clause, to transfer a one-half interest in property owned partially by himself, partially by others. The court upheld the transfer of a one-half interest only insofar as Rue had power to convey, and we can see nothing necessarily inconsistent in the court's action.

2. It is contended that in view of the fact that Rue's permit expired on March 14, 1923, no royalty could be transferred that did not come actually into existence prior to that date; that thereafter there was only the possibility that the permit might be renewed, and that an attempt to transfer such mere possibility was void. Attention is called to the rules of the department of the interior under which any extension of the permit lay wholly within its discretion. These rules are as follows:

"No. 7. Ordinarily no extension will be granted in the absence of the minimum amount of drilling required by the permit."

"No. 9. * * * In the absence of the discovery of oil or gas within the period of the permit or extension thereof, the permit will thereupon terminate and the lands or deposits will automatically revert to their original status, but the lands will continue segregated pending action by the Land Department or any application for extension that is timely filed."

"No. 12½. Permits after being awarded may be assigned to qualified persons or corporations upon first obtaining consent of the Secretary of the Interior."

Counsel for defendant believe that Tendolle v. Oil Syndicate, 38 Wyo. 442, 268 Pac. 185, 270 Pac. 542, disposes of this contention. It appears in that case that Tendolle, an agricultural entryman, had a vested preference right to a permit and lease under Section 20 of the national leasing

act (41 Stat. 445.) He filed application for a permit on June 15, 1921. Two days previously he granted one Savage the right to drill on the lands for oil, reserving a royalty-interest. On September 17, 1921, he transferred part of this royalty-interest to one Taylor. The permit was not granted until the following February. We held that the transfer to Taylor of the royalty interest in the oil later discovered on the land was valid. The case, accordingly, does not quite dispose of the contention here made by plaintiffs, although it recognizes the right of transfer of property the existence of which was not then known. Our attention is called to a number of cases which hold that a mere possibility cannot be transferred. We do not, however, think that the rule goes as far as counsel think it does. There is no doubt that the rules at common law were distinctly averse to assignments of anything not in existence at the time that they were made. 5 C. J. 852. But a gulf separates the time of the beginning of legal lore on this subject and the present. Equity has more and more, particularly in the last century, encroached on the principles of law formerly applicable. We cannot here go into detailed discussion. All we can do is to give a few illustrations. Assignments have been upheld: Of the proceeds of sales of goods in the future; of a patent not yet issued; of costs not yet accrued in a pending case; of a right to insurance money under a policy before loss; of a contingent right to a cash surrender value under an insurance policy; of wages to be earned under an existing contract. East Lewisburg etc. Co. v. Marsh, 91 Pa. 99; Goodyear v. Day, 6 Duer 161, 13 N. Y. Super. Ct. 161; Ely v. Cook, 9 Abb. Pr. 377; Bibend v. Ins. Co., 30 Cal. 86; Cornell v. Ins. Co., 179 Mo. App. 420, 165 S. W. 858, 6 C. J. 868. In all these cases, there existed the contingency, the possibility, that the assignment would be defeated because the thing assigned might never come into existence. We need not consider the more or less vexed question whether the assignment in controversy here would be good only in equity or whether it would be good also at law. Our statute

recognizes that future-acquired interest in land may be transferred, (W. C. S. 1920, Sec. 4618) and that the increase of animals and additions made to existing property may be transferred by mortgage (Sec. 4681-4682), so that the gap between law and equity in this respect has been closed to a considerable extent. In Low v. Pew, 108 Mass. 347, 11 A. R. 359, the court said:

"It is equally well settled that it is sufficient if the seller has a potential interest in the thing sold. But a mere possibility or expectancy of acquiring property, not coupled with any interest, does not constitute a potential interest in it, within the meaning of this rule. The seller must have a present interest in the property, of which the thing sold is the product, growth or increase. Having such interest, the right to the thing sold, when it shall come into existence, is a present vested right, and the sale of it is valid. Thus a man may sell the wool to grow upon his own sheep, but not upon the sheep of another; or the crops to grow upon his own land, but not upon land in which he has no interest."

In 5 C. J. 852-854, it is said:

"But even a mere possibility, if coupled with an interest, is capable of being conveyed or assigned at common law. Thus where the assignor has a present interest in that of which the thing assigned is the product, growth or increase, he has a present vested right to such future product, growth or increase when it shall come into existence, which right is assignable."

We think that the case at bar comes within the rule of the last authority cited. Rue had a present interest in the permit and the contract with Brown made in connection therewith. The royalty that is now due from the oil and gas produced on the land is the direct outcome of the permit. The fact that the department of the interior might not have renewed it, is not, we think, any answer. It did renew it. The renewal was made by reason of it,

and the royalty thereunder had not, we think, merely a possible but a potential existence. The contention made by counsel that a renewal lease was in fact a new one is directly negatived by Rue's own acts, for he himself recognized that the rights of his associates under it were the same as under the original permit.

3. The assignment of the permit made on January 16, 1923, was never used. It was deemed advisable to obtain an extension in Rue's name. When that was granted a new assignment was made, dated May 5, 1923, which was subsequently presented and approved. At the same time a new contract was made with Brown identical in terms with that of January 16. Counsel for plaintiffs contend that in view of the fact that the first contract and the first assignment (of January 16) were never used and the latter was never approved by the department of the interior, the transfer of the royalty made in contemplation thereof never became effective. We cannot, however, concur in the contention of counsel that the transfer was invalid merely upon the ground that the assignment mentioned was not approved. We perceive no reason why, in the absence of objections on the part of the Government of the United States, the transfer would not be valid between the parties. Again, according to Rue's testimony, the papers executed in May completed the agreement made in January, and they were accordingly, apparently, made merely to serve as additional evidence thereof. Moreover, if the transfer to Merrill was valid in the beginning, and the court held it to be so, Rue is not in position, we think, to say that he could defeat it by his subsequent acts, but should be held to have acted in the nature of a trustee for the interest of Merrill when he executed the later papers.

4. The court found against the plaintiffs on the question of forgery. There was ample evidence to sustain that

finding, and it cannot, accordingly, be disturbed. We have examined the original instrument of assignment. It bears no traces of any change, so far as we can discover. If Rue's testimony were true that the second paragraph was inserted after he signed it, it would have left substantially a space of three inches between the last line of the first paragraph and the line on which Rue signed—a fact which ordinarily would at once call for comment.

Nor can we disturb the finding of the court on the issue of duress. Leavitt's testimony indicates that the assignment was made voluntarily. He did not know, it is true, of the threat "to blow up the deal," but we doubt that such threat constituted duress. Connelly v. Bouck, 174 Fed. 312. But if it did, we think the court was justified in finding that plaintiff had not acted sufficiently promptly in bringing suit to set the assignment aside, and that he ratified it by his silence of five years, particularly in view of the fact that the assignment involved a royalty, which was wholly speculative. It is held that where there has been delay in bringing an action to set aside a deed on the ground of duress, clear convincing evidence will be required to explain the failure to proceed. Lyon v. Walso, 36 Mich. 345; Eberstein v. Willetts, 134 Ill. 101, 24 N. E. 967; Guinn v. Ry. Co., 63 Or. 368, 127 Pac. 987; Meyer v. Barde, 112 Or. 197, 228 Pac. 121. The record in the case at bar is devoid of any explanation of the long delay, and we cannot, accordingly, see how we can hold that the court was wrong in its conclusions. See further, Myers v. Gray, (Sup.) 122 N. Y. S. 1079; Taylor v. Oil Co., 285 Fed. 532; Black on Rescission & Cancellation, 1, 592.

5. The only question, accordingly, left to be discussed is as to whether or not want of consideration should have caused the trial court to have cancelled the instrument. The defendant Brown contends that he is a purchaser in good faith, without notice. But he purchased from one

who, so far as the record shows, had no title, and in such case his purchase in good faith and for a valuable consideration cannot be set up in defense against a title otherwise good. 39 Cyc. 1690, 1691; 8. C. J. 1149. So we must consider the case without that point involved. The action herein is to quiet title and to cancel the assignment above mentioned. We think, accordingly, that the rules pertaining to the burden of proof and of evidence may be applied in this case which apply in the ordinary case to quiet title. The plaintiff, then, was compelled to rely on the strength of his own title and he could not rely on the weakness of that of his adversary, namely, on the fact that the chain of title of Brown was incomplete. 51 C. J. 247, 248; 5 R. C. L. 675. Plaintiffs made a *prima facie* case when they established the issuance of the permit, the contract with Brown and their interest in the association above mentioned, and the burden of the evidence then shifted to the defendant to show a conveyance by Rue. Sears v. Murdock, 59 Or. 211, 117 Pac. 205; 5 R. C. L. 673. This burden was met, when the transfer above mentioned was shown, duly executed by Rue, bearing no marks of alteration, and stating that it was for a consideration, which was evidence of that fact. In other words, the title to the property was thereby shown to have passed from Rue to someone else, and in view of the fact, as above stated, that plaintiff must recover on the strength of his own title, it made no difference whether that title passed to Brown or to someone else. The burden, therefore, to overcome this *prima facie* case, in other words, to show want of consideration, was upon the plaintiff. 13 C. J. 760; and see 18 C. J. 421; 18 C. J. 422; 9 C. J. 1252; and Cuddy v. O'Brien, 55 Cal. App. 469, 204 Pac. 37. The sole remaining question, accordingly, is whether that burden has been met. The fact that the assignment of the permit from Brown to Orchard stated that Rue was entitled to a 7½ per cent royalty was explained, and we cannot say

that the court was in error in disregarding that matter. Nor can we say that it should have given greater consideration to Merrill's absence as a witness. The only testimony directly bearing on the question of consideration was given by the plaintiff. Still, the court had a right to consider that no attack was made on the transfer for five years after it was executed, and the indirect effect of Leavitt's testimony. The most damaging fact against Rue undoubtedly was the fact that he did not, in the opinion of the court, sustain his contention on the claims of forgery and duress, and it thereupon, we take it, applied the rule of *"falsus in uno, falsus in omnibus,"* holding that the presumption that the witness told the truth was overcome. That rule of law is well established. 40 Cyc. 255; Stoffer v. State, 15 O. S. 47, 86 Am. Dec. 470. The Sanctissima Trinidad, 7 Wheaton 283, 5 L. Ed. 454; Campbell v. State, 3 Kans. 488. What we are really asked to do in this case is to hold that the trial court had no right to apply that rule in the case at bar. We have considered the point carefully, and have come to the conclusion that we cannot so hold, and that to do so would clearly invade the province of the trial court.

The judgment of the trial court in quieting title in Brown in 1/18th interest in the royalties in question is technically incorrect, since the title of Brown was not fully established. But we do not see how plaintiffs can complain of that, since the judgment against them must be upheld. And it follows from what we have said that the decree of the court as between plaintiffs and Brown should be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.