QUEALY LAND & LIVESTOCK COMPANY v. GEORGE, ET AL.

(No. 1938; January 5, 1937; 63 Pac. (2d) 203)

(Rehearing denied March 16, 1937; 66 Pac. (2d) 1045)

94

For the plaintiff in error there was a brief by *Corthell, McCollough & Corthell* of Laramie and oral argument by *M. E. Corthell.*

For the defendants in error, there was a brief and the cause was argued orally by *Frank E. Anderson* of Laramie.

PER CURIAM.

This case is here on the third appeal. The opinion of this court on the first appeal will be found in 36 Wyo. 268, 254 Pac. 130. The opinion on the second appeal appears in 45 Wyo. 254, 18 P. (2d) 253. The present appeal is from a judgment in favor of the defendants and against the plaintiff.

For the main facts in this case we refer to the former opinions. We shall mention only a few, including the main items of additional testimony adduced at the third trial, in order that this opinion may be intelligible. The plaintiff claims as fraudulent a certain real estate mortgage dated April 22, 1922, a chattel mortgage for $7000 given on the same date, and another chattel mortgage for $6873.75 given on September 25, 1923, all given by Herman George to his mother Henrietta George. A deed was subsequently taken for the real estate, a bill of sale for the chattels, and possession given to the mother. These instruments, too, are sought to be set aside, as given without consideration. The defendants . claim that Henrietta George, mother of Herman George, advanced to the latter the sum of $11,000 prior to 1920; $7000 in 1920-1922, and the sum of $6873.57 in 1923, the two latter sums making $13,873.57. The first trial resulted in the finding of the court that the real estate mortgage was valid, and

not given to defraud creditors. An appeal was taken from that judgment, and the finding of the court in that respect was affirmed, on the first appeal to this court mentioned above. One of the chattel mortgages given, namely, for $7000, also was upheld, and the second, namely, one for $6873.57 was held fraudulent. That finding was reversed. The second trial resulted in upholding both chattel mortgages. On the second appeal the judgment was reversed for the refusal of admitting certain evidence.

On the third trial additional testimony was adduced. That testimony had a bearing, partially, on the transactions prior to 1920, partially on those after 1920. The main testimony bearing on those prior to 1920 is as follows: Certain items (for $520 and $2800) were claimed to have been advanced by the mother to the son for sheep. Plaintiff sought to show that Herman George did not in fact buy the sheep alone, particularly, the sheep for which the item of $2800 was paid, but that the sheep were bought jointly by Herman George and his brother Charles George, and in that manner the items claimed to have been so advanced were sought to be discredited. There can be no doubt that the sales of the sheep took place and that they were paid for. Charles George testified that they belonged exclusively to Herman. Testimony, however, was introduced that in 1918 he signed an assessment schedule claiming one-half of the sheep. To discredit the whole loan of $11,000, prior to 1920, testimony was introduced that during 1919 there was litigation between Henrietta George and Herman George, wherein the latter claimed wages for his mother, and in which the mother claimed to have advanced certain items to the son, none of which corresponded with the items claimed to have been included in the $11,000 mortgage. It was further shown that the feeling between mother and son during the litigation was bitter. The main

items of testimony bearing on the loans claimed to have been made after 1919 will be mentioned later.

Counsel for the plaintiff, appellant here, have devoted a great portion of their brief to the testimony relating to the transactions prior to 1920. Perhaps they have laid too great a stress thereon. These transactions are involved in this case only incidentally. They all relate to the real estate mortgage, which was upheld by the trial court, affirmed in this court, and that matter is, accordingly, res judicata. The only bearing which they have upon the subsequent transactions is merely by way of crediting or discrediting the testimony relating to the transactions subsequent to 1920. In view of that fact, this court, after discussing some of the testimony erroneously excluded on the second trial, stated in the opinion on the second appeal that "it should be observed in this connection, however, that the sum of $13,873.57 was claimed to have been loaned the son by the mother after 1919. If as a matter of fact this money was loaned as claimed and it should further appear that the personal property in question is not worth more than such sum, the mother should be protected." The only actual question in this case, accordingly, is as to whether the sum of $13,873.57 was loaned, and the value of the chattels turned over to the mother. All else is merely incidental. And we may say in this connection that the plaintiff claims that the value of the property turned over to the mother is the sum of $14,210. Value being to some extent at least a matter of opinion, the difference between the last mentioned sum and the sum of $13,873.57 is too small to be taken into consideration here, so that the only question left herein is as to whether this sum was actually loaned. Counsel for plaintiff claim that there is no substantial evidence to support such claim. That depends on whether or not Mrs. Krueger, daughter of Henrietta, told the truth.

If she did, there is substantial testimony. And in this connection it may be stated that three different trial judges credited her testimony as to the $7000 mortgage, and two different trial judges believed her as to both of the chattel mortgages, and the only question for us, accordingly, is as to whether the circumstances shown are so distinct, clear and convincing that the trial judges had no right to believe Mrs. Krueger. That this is asking a good deal of this court is apparent, in view of the fact that Mrs. Krueger was on the witness stand in each of the trials, and the trial court had a much better opportunity to know the truth than we have.

Without going into details, the question whether or not Charles George owned a half interest in the sheep was, we think, a question for the trial court. Most of these sheep were bought on November 23, 1917. On that day Herman George obtained a cashier's check for $2500. That nearly covered the purchase price, and seems to indicate that Charles George did not obtain a half interest therein. The facts in reference to the lawsuit between Herman George and Henrietta George seem, at first blush, to show that Mrs. Krueger should be discredited at least as to some of the items making up the $11,000 above mentioned. If, however, it is true, as stated in the opinion on the first appeal in this court, that a mortgage for this amount had already been given on November 23, 1917, it is not unreasonable to believe that Henrietta George merely deemed it best not to bring this mortgage, and the note secured thereby, into controversy in that suit. The testimony, adduced by plaintiff, in connection with this suit, was not contradicted. However, Mrs. George had died before the trial of the case, and could not well explain it, and this fact must be taken into consideration. Doubtless Herman George could have explained it. He did not appear, though attempted to be sum-

moned by the plaintiff. We take it, however, that he is not particularly interested in the outcome of this action. Most of his property had been taken away from him by his mother. His nearest relatives are, probably, the only ones interested herein. And for aught we know, he may be as hostile to his co-defendants as to plaintiff, and perhaps more so. So that we can not lay much weight on the fact that he did not testify.

We come then to the main testimony in this case, which was introduced to discredit Mrs. Krueger. In 1923 certain sheep and wool was sold for the sum of $10,411.49. This was deposited to the credit of Henrietta George. Herman George, however, checked out all but $3550.00. The latter sum was left for Henrietta. Notwithstanding this, she swore, when she renewed the first chattel mortgage, that nothing had been paid thereon. This fact is commented on at length in the brief of plaintiff. We think we sufficiently stated our view thereon in the opinion on the first appeal.

The items claimed to have been loaned to Herman George during 1920 and 1921 did not find their way into the accounts which he kept in the banks in Laramie. That, doubtless, is a suspicious circumstance, which, together with other testimony in the case, would have warranted the trial court to have found the transactions herein to be fraudulent. Yet it is a suspicious circumstance only. The mother could not be held responsible for what her son did or did not do with the money after she loaned it, and there is nothing in the testimony to show that she was in any way involved in the concealment of these items, if they were in fact loaned and concealed.

Mrs. Krueger testified that an item of $3873.57 was loaned by her mother to Herman on August 8, 1922; that this money came through her sister Mrs. Voegtlin, who at that time sold a house which she owned in Laramie. The house was sold for $5800. Part of this

went to the building and loan association. Charles George acted as the agent for Mrs. Voegtlin in selling the property, and on August 30, 1922, he procured for her a draft in Laramie for the sum of $4200, which he sent to Mrs. Voegtlin, and which was cashed at Salem, Oregon, on September 6, 1922, showing that this money could not have been paid to Herman on August 8, 1922, and showing further that Mrs. Voegtlin was not at Laramie at that time, as Mrs. Krueger had testified on the first trial of this case. We agree with counsel for the plaintiff that Mrs. Krueger's testimony on this item is not satisfactory. She was at least mistaken as to the date of the loan, and apparently also as to the presence of Mrs. Voegtlin at Laramie at that time. And we have our doubts in this connection. Yet the date and the presence or absence of Mrs. Voegtlin in Laramie are but collateral matters, and not of importance, if the money was in fact loaned. The rule of falsus in uno falsus in omnibus is not as broad as counsel claim. That rule at most permits the court to reject the testimony of the witness; it does not compel it to do so. The rule has but a bearing on the credibility of the witness. Wigmore, Ev., Sec. 1010; 64 C. J. 613; Rue v. Merrill, 42 Wyo. 511, 297 Pac. 379.

We have gone over the main items of the testimony. We need not touch on minor items. Combined, they undoubtedly would make a good case for plaintiff, if the court should cast aside the testimony of Mrs. Krueger on the main facts, namely, the actual loans of the various items. It may be here mentioned that she was corroborated to some extent. We need not go into that in detail. It is stated by counsel that no need for the great amount of the loans has been shown, and that this itself is a suspicious circumstance. However, it was shown that the mother advanced money for the defense of Herman in a case wherein he was charged with larceny. See State v. George, 32 Wyo. 223, 231

Pac. 683. That might have taken a large amount of money, depending to some extent on the amount of attorneys' fees charged him. That fact itself takes away, or tends to take away, all force from the contention that no need for the money was shown. It at least suggests the possibility that most of it went for such defense, and the further possibility that unless he had the money on hand, he was forced to borrow it, and a not unlikely creditor would be his mother. It further suggests the possibility of explanation why the items loaned in 1922 did not go into the checking account of Herman. All in all, we think that the case was one for the trial court to solve. The judgment is accordingly affirmed.

*Affirmed.*

ON PETITION FOR REHEARING

PER CURIAM.

A petition for rehearing has been filed herein. Attention is called to the fact that the last loans were made in 1922 instead of 1923, and that the sale of the lambs took place in the former year. These errors in our opinion were clerical merely and do not affect the result. Nor is that changed by reason of the fact that not as many judges as stated in our opinion saw Mrs. Krueger on the witness stand. The simple and fundamental fact remains that counsel for appellant want us to pass on the credibility of the witnesses, including Mrs. Krueger, and hold that the trial court had no right to believe them. That is the substance of this case. Counsel, however, well know that this court has ordinarily, and with few exceptions, steadily refused to do so, for reasons stated over and over again. We have the testimony in this case fully in mind. Counsel is correct in claiming that many circumstances herein indicate that the mortgages in controversy were fraudulent. And we should have had no hesitancy in up-

holding the trial court, if counsel had been able to persuade it to so hold them. But they were unable to do so, and now the only question remains as to whether we have a right to say that the trial court should not have believed the witnesses for respondent. The case, we admit, is a close one. But the circumstances herein are not, we think, so necessarily compelling as to require us to refuse to apply a rule which we have so steadily followed in cases which involve the credibility of witnesses. A rehearing must, accordingly, be denied.