Argued June 17, reversed and remanded July 29, mandate issued October 7, 1924.

# F. L. MEYER *v.* M. BARDE and JACOB LEVITT.

(228 Pac. 121.)

**Appeal and Error—Court's Findings in Law Action Tried Without Jury Conclusive if Sustained by Competent Evidence.**

1. Court's findings of fact in law action tried without jury are conclusive on appeal, if sustained by any competent evidence, and cannot be disturbed unless evidence from which made was not sufficient, as matter of law, to support them.

**Deeds—Insurance—Wife's Deed and Assignment of Insurance Policy to Holders of Husband's Notes Held Illegal as Intended to Stifle Criminal Prosecution.**

2. Wife's deed of house and lot occupied by her and bankrupt husband as residence and assignment of insurance policy on his life to holders of notes executed by him and partner *held* illegal, as intended to stifle criminal prosecution of husband.

**Contracts—Party to Executed Illegal Contract cannot Recover Property Transferred in Absence of Fraud, Mistake or Duress.**

3. Neither party to fully executed contract, which is illegal as intended to stifle criminal prosecution, can recover money paid or property transferred in execution thereof, unless obtained by fraud, mistake, or duress.

**Contracts—Deeds—Wife Held Entitled to Recover Property Conveyed to Holders of Husband's Notes to Shield Him from Criminal Prosecution.**

4. Wife conveying property to holders of husband's notes to shield him from criminal prosecution *held* entitled to avoid deed and recover property conveyed on ground of duress, not being *in pari delicti.*

---

4. Validity of contracts procured by threats of prosecution of a relative, see notes in Ann. Cas. 1917C, 1026; 26 L. R. A. 48; 20 L. R. A. (N. S.) 484; 37 L. R. A. (N. S.) 539; L. R. A. 1915D, 1118.

See 4 C. J., §§ 2546, 2853; 9 C. J., §§ 44, 195; 13 C. J., §§ 315, 325, 389, 440, 442; 18 C. J., §§ 174, 178; 25 Cyc., pp. 1370 (1926 Anno.), 1434.

**Deeds—Deed Procured by Duress Merely Voidable.**

5. Deed procured by duress is not void but voidable, and may be ratified.

**Deeds—Ratified by Lapse of Unreasonable Time After Execution Under Duress Before Taking Steps to Set Aside.**

6. Deed executed under duress is ratified by lapse of unreasonable time before taking steps to set it aside.

**Cancellation of Instruments—Clear Convincing Evidence Required to Explain Delay in Bringing Action to Set Aside for Duress.**

7. Clear convincing evidence is required to explain delay in bringing action to set aside deed on ground of duress.

**Deeds—Defense of Duress in Conveyance of Property by Defendant's Wife not Available to Defendant in Action on Notes.**

8. Defense that wife of one of two partners sued on notes conveyed her property and assigned insurance policy under duress to shield husband from criminal prosecution is not available to defendants after her ratification of deed by failure to take steps to avoid it before trial.

**Appeal and Error—Question as to Which Court Made no Finding not Presented for Review.**

9. Where trial court made no finding, in action on notes, that acts by which defendant's wife was induced to convey her property to shield him from criminal prosecution constitued duress as to him, such question is not presented for review.

**Contracts—Duress Exists if Contract Caused by Threats of Prosecution is not One of Restitution, Though Promisor is Guilty.**

10. While transaction or contract compelling one to perform or agree to perform what he could have been compelled to do legally cannot be avoided for duress, duress exists if contract caused by threats of prosecution is not one of restitution, but is on different subject matter, though promisor is guilty.

**Limitation of Actions—Findings that Payments Credited on Notes Sued on were not Voluntarily Made Held not Sustained by Evidence.**

11. Findings that payments credited on notes sued on, in amounts stipulated as consideration for transfer of property by maker and his wife were not made voluntarily by them or under their direction, and hence did not affect running of statute of limitations, *held* not sustained by evidence.

**Limitation of Actions—Payments Under Duress in Amount Stipulated as Consideration for Transfer of Property Held No Defense to Action on Notes on Which Credited.**

12. That payments credited on notes in amount stipulated by holders as consideration for transfer of property by maker's wife were made under duress to prevent criminal prosecution of maker *held* no defense to action for balance due on notes.

From Multnomah: W. N. GATENS, Judge.

Department 1.

This is an action to recover on four promissory notes executed on October 27, 1912, by the defendants, M. Barde and Jacob Levitt, as copartners. The plaintiff is the present holder of the notes. Each note bears an indorsement crediting it with a payment made on April 24, 1915. The action was commenced on April 21, 1921.

The defendants plead the statute of limitations as a bar to the action. They contend that the payments credited on April 24, 1915, were not voluntarily made, nor made by them, nor under their direction. If this contention should be sustained, the action is barred, for more than six years had elapsed upon each note between the time of the next preceding payment and the time when this action was commenced.

The defendants, by their answer, in brief, allege that in March, 1915, D. C. Latourette, acting for and on behalf of the holders of the notes, endeavored to extort money from the defendant Levitt by claiming to have in his possession a false statement signed by Levitt, which, by Levitt's use of it in procuring credit, Latourette claimed constituted a criminal offense, and threatened to procure an indictment against him and to secure his conviction and imprisonment unless Levitt would turn over to the holders of the notes funds additional to those they had derived through the bankruptcy proceedings; that Latourette executed the threat by procuring an indictment against Levitt charging him with having obtained money under false pretenses; that Levitt, fearing that he would be convicted, and, acting under duress, turned over to Latourette a house and lot and an insurance policy; that said transfer was not made voluntarily nor as a

part payment upon the notes, but was made for the sole purpose of securing immunity from prosecution and in consideration of Latourette's promise not to prosecute if Levitt would submit to said extortion; that after said transfer Latourette procured the dismissal of the criminal action and failed and refused to further prosecute the same, and that by reason thereof said transfer did not constitute a partial payment upon the notes and did not have the effect of tolling the statute, and because thereof, plaintiff's right of action is barred.

For a second further answer and defense, defendants allege that the payment credited on the notes as of the date of April 24, 1915, consisted only of the turning over by Levitt and his wife to Latourette, as agent, for the holders of the notes, of the life insurance policy, of which she was the beneficiary, and the home they occupied, of which she was the sole owner; that the defendants had been adjudicated bankrupts, a trustee in bankruptcy appointed who was entitled to all of the assets of the bankrupts and of all property in which they had an interest; that Latourette procured the indictment and that Mrs. Levitt turned over said property to him because of his threat to railroad Levitt to prison on the charge of having made a false statement of his assets and liabilities, and that in consideration of the turning over to him by Mrs. Levitt of the property, Latourette did procure the dismissal of the indictment.

These allegations and substantially all of the new matter in the answer were denied by the reply. The reply, in brief, alleges that Levitt did make a false statement and thereby procured a loan of money for which the notes were given; that the facts were presented to the grand jury and that an indictment was returned, charging Levitt with the crime of having

obtained the money represented by the notes under false pretenses; that on or about April 24, 1915, Levitt and his attorney represented to the holders of the notes that he had this life insurance policy and home which he would turn over to them for a credit upon the notes of the sum of $2,173; that the offer was accepted and the credits given; that the transfer was not made upon the consideration that the indictment should be dismissed or upon any consideration, except for credit to be applied on the notes; that the indictment, in fact, was not dismissed until two years thereafter. The reply also alleges that both defendants knew of the transfer and knew of the application of the sum for which the transfer was made as a payment upon the notes; that they never made any objection thereto; that in subsequent negotiations between them, the amounts so paid upon the notes were referred to, and calculations of the balance due upon the notes were made, upon the basis that said payments had been made and were valid, and that the transfer of the property and the application of the consideration agreed to be paid therefor as a part payment upon the notes had been ratified and adopted by the defendants.

The facts material to this controversy are: Prior to the execution of the notes sued on, the defendant Levitt, in order to procure from the holders thereof a loan of the amount represented by the notes, gave them a statement in writing of his assets and liabilities. This statement showed that he was solvent and had assets, the value of which was more than $15,000 in excess of his liabilities. Subsequently involuntary proceedings in bankruptcy were brought against the firm and the defendants individually in the federal court for the district of Oregon, and on March 7, 1913, they were each and all adjudged to be bankrupts.

On his examination in said bankruptcy proceedings, the defendant Levitt testified that on the very day that he had made and presented said statement to the holders of the notes for the purpose of procuring the loan he was insolvent and his liabilities were far in excess of the value of his assets. It was found and determined in the bankruptcy proceedings that the aggregate debts and liabilities owed by the firm and the defendant partners individually were approximately $150,000, and that the entire assets were only sufficient to pay dividends thereon aggregating thirty per cent thereof. The final dividend was paid on August 19, 1914, and the amount thus paid constitute the only payments credited upon said notes except the disputed payment made on April 24, 1915. During the pendency of the bankruptcy proceedings the defendants offered a composition, but this composition was refused by the creditors of the bankrupts. It also appears that the federal court refused to grant a discharge in bankruptcy to the bankrupts or either of them.

The First National Bank of Oregon City was the holder of one of said notes, and Mr. D. C. Latourette was its president. Latourette knew that Levitt, on his examination in the federal court, had testified that he was insolvent at the time he made the statement that he was solvent in order to procure the loans for which the notes were given. After a discharge in bankruptcy had been refused by the federal court Latourette called Levitt by telephone, and in the conversation then ensuing requested him to come to Oregon City and take up and pay the balance due upon the notes. In that conversation, according to Levitt's testimony, although this is denied by Latourette, Latourette stated to Levitt that if he failed to take up and pay the notes he would have him in-

dicted by the grand jury of Clackamas County for the crime of having obtained, under false pretenses, the money for which the notes were given. Levitt did not go to Oregon City and did not comply with Latourette's demand. Thereupon Latourette did lay the matter before the grand jury and did procure an indictment against Levitt, charging him with the crime of obtaining money under false pretenses. Levitt was then arrested by the proper officials, taken to Oregon City and released on bail. Levitt thereupon employed in his defense Mr. Russell Giltner, a reputable attorney of Portland, Oregon, who died before the commencement of this action. Giltner, on his own motion, went to Oregon City and there consulted with Latourette concerning said charge. The evidence does not disclose what took place between them, but subsequently, and on April 24, 1915, Giltner, accompanied by Levitt and Mrs. Sophie Levitt, defendant's wife, returned to the bank, and after consultation with Latourette delivered to him a deed executed jointly by Mr. and Mrs. Levitt, conveying to a grantee whose name is not disclosed, but for the benefit of the holders of the notes, a house and lot in Oregon City which was at the time encumbered by a mortgage for $2,000 and liens for street assessments. They also jointly assigned and delivered a life insurance policy payable in the sum of $2,000, to Mrs. Levitt upon the death of her husband, in which policy Mrs. Levitt was named as the sole beneficiary. It is admitted that the policy, in terms, provided that Levitt might substitute another beneficiary for the one named in the policy. It appears from the testimony of the defendants that Levitt himself paid the premiums on said policy and that the house and lot were purchased partly with Levitt's money and partly with money furnished

by Mrs. Levitt. At the time said transfers were made, it was understood and agreed between Latourette and the Levitts that the consideration for said conveyance was the sum of $1,500 and for said assignment the sum of $673, and that these sums should be credited as a partial payment on the four notes in question. The aggregate of these two sums, amounting to $2,173, was applied in part payment of the four notes, as agreed upon, and credit therefor was indorsed upon the notes as of the date of April 24, 1915.

There is not the slightest pretense or contention to be found in the evidence that the value of the house and lot, after deducting the amount of the encumbrances then subsisting against it, was more than $1,500, the consideration agreed to be paid therefor; nor that the insurance policy which had no cash surrender value was worth more than the amount stipulated to be paid therefor. It is admitted that Mrs. Levitt received no consideration, either for her deed or for the assignment. According to the testimony of Mrs. Levitt she was induced to make the conveyance and assignment, not by anything said to her or in her presence by Latourette or by the holders of the notes or any person representing them, but by the importunities of her husband and the advice of her attorney, Mr. Giltner, who represented to her that if she joined with Levitt in making the conveyance and assignment, Levitt would not be prosecuted, but that if she refused to make the deed and assignment he would be prosecuted upon the indictment, and might be convicted of the charge, and if convicted would be imprisoned in the penitentiary of the state, and that her sole inducement for making the deed and assignment was her fear of the consequences that would result to her husband if prosecuted upon said

charge. Except Levitt's testimony that Latourette
threatened that unless the notes were paid he would
present the matter to the grand jury, there is no tes-
timony tending to show that the holders of the notes
or any person acting for them made any direct threat
against Levitt. The testimony does tend to show,
however, that at the time of the delivery of the deed
and assignment to Latourette, he said to the Levitts
that this would mark the end of the prosecution against
Levitt. Levitt was not prosecuted and about two
years later the indictment against him was dismissed
on motion of his attorney with the consent of the
district attorney. The district attorney was called
as a witness. He testified that he had never been
informed of the transfer; that neither Latourette nor
any holder of the notes or person representing them
had ever requested him to not prosecute Levitt or to
dismiss the indictment; that the sole reason for not
prosecuting the case was that during the first term
it was continued for the term on the motion and affi-
davit of Levitt, and that during the second term,
through stress of court work, the case was not called
for trial and was overlooked, and having gone over
the second term without a trial the indictment be-
came nugatory by force of the statute.

The cause was tried to the court without the inter-
vention of a jury, and, under the issues made by the
pleadings, the court, among other things, found as
follows:

"That in the month of March, 1915, while said
bankruptcy proceedings were pending, and while the
defendant Jacob Levitt was working in the City of
McMinnville, Oregon, the said D. C. Latourette, acting
in the capacity hereinbefore mentioned, called the
said Levitt over the long distance telephone and told
him that the Clackamas County grand jury was then
in session, and that unless the said Levitt showed up

at once in Oregon City and made some arrangements
in connection with his indebtedness on the notes
aforesaid his indictment would be procured on the
charge that he, the said Levitt, had, in the month of
August, 1912, made a false statement of assets and
liabilities; that the said Levitt did not appear and
that an indictment was returned by the said grand
jury upon the testimony of D. C. and his partner,
C. D. Latourette, and upon the evidence furnished to
said grand jury by the said complaining witnesses in
said regard, and the said Levitt was arrested in Mc-
Minnville, Oregon, and taken to Oregon City, where
he later secured bail. That before the criminal trial
of the said Levitt on the said indictment, and while
the charge was pending, negotiations were had by the
said Levitt and by his attorney, R. R. Giltner, with
the said D. C. Latourette, acting in the capacity afore-
said, with a view to procuring for the said interests
represented by the said D. C. Latourette, the prop-
erty, real and personal, hereinafter set forth. That
in the course of negotiations for the delivery of said
property, real and personal, no consideration therefor
was discussed in addition to the application of the
proceeds on said notes, filed in said bankruptcy pro-
ceedings, except the discontinuance of or omission to
press the said Levitt in said criminal proceeding.

"That thereafter the said defendant Jacob Levitt,
in company with his wife, Sophie Levitt, and R. R.
Giltner, his attorney, came to Oregon City, while said
indictment and criminal charge were pending, and
the said Sophie Levitt then and there assigned her
interest in an insurance policy of the Massachusetts
Mutual Life Insurance Company upon the life of the
said Jacob Levitt in the proceeds of which she had
a sole vested interest as beneficiaries and executed and
delivered, at the instance of said D. C. Latourette, act-
ing in the capacity aforesaid, to one Lyons, as Trus-
tee, for the holders of the notes mentioned in the com-
plaint, the home at Oregon City formerly occupied by
the said Sophie Levitt, and of which she was the sole
owner. At the time of executing said documents and
parting with the title to said real and personal prop-

erty, the said Sophie Levitt was not in condition to exercise free will and judgment; that said act on her part was induced by fear and apprehension as to the criminal consequences to her husband, because of said indictment if she refused, and that the consideration of the surrender of said real and personal property by the said Sophie Levitt, was the assurance, on the part of the said D. C. Latourette, acting in the capacity aforesaid, that the said transfers would mark the end of the criminal proceedings against the said defendant Jacob Levitt, the husband of said Sophie Levitt; that the said transactions, at which the said Sophie Levitt turned over the said real and personal property, constitutes what is designated in each cause of action herein as a 'payment' on April 24, 1915; but that the said transfer was in no sense a voluntary payment by either party herein, nor a payment made by or under direction of either, but was an independent transfer of her individual property by said Sophie Levitt because of the pendency of said criminal proceedings, and no other inducement was held out to her, except the cessation of said criminal proceedings against her said husband, promised her by said D. C. Latourette, acting in the capacity aforesaid.

"That thereafter the complaining witnesses, D. C. Latourette and L. E. Latourette failed to manifest any interest in the indictment procured at their instance, and the District Attorney of Clackamas County acquiesced in a dismissal of the said indictment for want of prosecution."

From these findings the court concluded, as a matter of law, that:

"The transfer of real and personal property referred to in several causes of action as a 'payment' on April 24, 1915, was not a voluntary payment or any payment by either of the defendants, but was a transfer of property by Sophie Levitt, wife of the defendant Jacob Levitt, acting under duress, and did not in any way affect the running of the statute of

limitations upon said cause of action herein, or any of them.

"That action on each of the notes mentioned in the said several causes of action in the complaint herein is barred under Section 6, subdivision 1, Oregon Laws, providing that action shall be barred on a contractual indebtedness of the nature set out in the several causes of action in the complaint herein, unless instituted within six years from the time right of action accrues.

"Each of the defendants are entitled to judgment against the plaintiff for his costs and disbursements herein."

and gave judgment accordingly.

It appears from the bill of exceptions filed herein that the defendant objected to each finding made by the court and requested the court to make other findings in lieu thereof, and, to the court's refusal, duly excepted.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. E. C. Latourette* and *Mr. L. E. Latourette,* with an oral argument by *Mr. John R. Latourette.*

For respondents there was a brief over the name of *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. Roscoe C. Nelson.*

RAND, J.—The court found that the sole consideration for the surrender of the house and lot and insurance policy by Mrs. Levitt was the assurance by Latourette that the delivery of the deed and assignment would mark the end of the prosecution of Levitt, and that these transfers were not made by her freely and voluntarily, but were induced by fear and apprehension upon her part of the consequences that would result to her husband upon the prosecu-

tion of the criminal charge then pending, and that the application of the amount agreed upon as the consideration for said transfers in partial payment of the notes was not a voluntary payment upon the part of the makers, and that the payment was not made by them or under their direction.

1. The statute declares that in an action at law, when tried by the court without the intervention of a jury, the findings of the court upon the facts shall be deemed a verdict. The findings of the court, therefore, are conclusive upon this appeal if there is any competent evidence to sustain them, and cannot be disturbed unless it appears that the evidence from which they were made was not sufficient, as a matter of law, to support them: *Good* v. *Smith,* 44 Or. 578 (76 Pac. 354); *Gormand* v. *McGowan,* 44 Or. 597 (76 Pac. 769); *McClung* v. *McPherson,* 47 Or. 73 (81 Pac: 567; 82 Pac. 13); *Wolf* v. *Eppenstein,* 71 Or. 1 (140 Pac. 751).

2. It appears from the testimony that at the time of the delivery of the deed and assignment, Levitt had been arrested and was under indictment, charged with the commission of a criminal offense; that he had just passed through bankruptcy proceedings; that the only property possessed by the Levitts consisted of the house and lot in question; that the title to this property stood in the name of Mrs. Levitt; that at the time of the bankruptcy proceedings the Levitts occupied it as their place of residence. It was therefore exempt property and, for that reason, if the legal title had been vested in Levitt, it would not have passed to the trustee in bankruptcy. Mrs. Levitt was not in any way responsible for the payment of the notes and she received no consideration for her deed. The sole inducement for her execution and delivery of the deed and assignment was the fear and

apprehension she entertained for her husband's safety if prosecuted upon the charge for which he had been indicted. She had been induced to make the conveyance by the importunities of her husband and by the advice of her counsel after a consultation by him with Latourette. What took place at that conference is not disclosed, but the evidence clearly indicates that there was at least an implied, if not an express, agreement upon Latourette's part that if the conveyance was made and the policy assigned, the holders of the notes would take no active part in the prosecution of Levitt, which inference is strengthened by the testimony of Mrs. Levitt, although disputed by Latourette, that Latourette stated in her presence at the time the deed and assignment were delivered that that transaction would end the criminal proceedings against Levitt. Under these facts and circumstances, the transaction was clearly illegal, as the object of it was to stifle a criminal prosecution.

It is essential to public order and to individual security that the laws against offenses injurious to the public should be fairly administered and enforced, and that the course of public justice should not be obstructed by any private combination or agreement, the object of which is to prevent a fair investigation of an alleged offense. The particular interest of an individual who has received a special injury from the commission of a criminal offense, says Mr. Greenhood, "is one of the securities on which the public relies and has a right to rely for the enforcement of the laws and its own safety"; Greenhood on Public Policy, 451.

3. As the consideration for which these transfers were made was illegal and contrary to public policy, the entire contract was illegal and void, and as long as it was unexecuted neither party could enforce it.

The contract is itself no longer executory but has been completely performed, and neither the plaintiff nor the defendants are seeking to enforce any undertaking or agreement entered into under said unlawful contract. The illegal and void contract having been fully executed, neither party to it can recover back money paid or property transferred in execution of the illegal and void contract unless the money or property was obtained from such party by fraud, mistake or duress: Greenhood on Public Policy, 76, and authorities there cited.

4. That Mrs. Levitt was induced to convey her property by duress clearly appears from the testimony. She was under no obligation to pay the notes and her sole inducement for conveying the property was to shield her husband from the consequences of his own criminal act, and this she hoped to accomplish by the transfer of her property. The holders of the notes had no legal right to demand security from her for the payment of her husband's debts or the transfer of property in satisfaction of his debts on condition that if she paid or secured the debt her husband would escape a prosecution. Such a demand upon their part and compliance with it upon her part amounted to duress and entitled her to avoid any undertaking entered into by her or promise made or security given, and to recover back moneys paid or property conveyed under said illegal contract: *Rostad* v. *Thorsen,* 83 Or. 489 (163 Pac. 987, L. R. A. 1917D, 1170); *Kohler & Chase* v. *Savage,* 86 Or. 639 (167 Pac. 789).

5-7. Mrs. Levitt was herself a party to this illegal contract. It is not because of the illegality of the contract, but because of the duress that caused her to become a party to it, that entitles her, as a matter of law, to avoid her deed and recover back what she has

parted with. But for the duress she would be remediless, because, together with all the other parties to the contract, she would be *in pari delicto,* but, having been caused by duress to become a party to the contract, she is only *in delicto.* As the law gave her the remedy of avoiding her deed because of the duress only and not because the contract was illegal and void, her conveyance, when fully executed, was voidable and not void. She could, at her option, either avoid the deed or ratify it. "A deed made by one by duress is not void, but voidable." 2 Co. Ins. 482.

"Where a deed has been executed under duress, and an unreasonable length of time has elapsed after the execution of the deed before steps are taken to set the same aside, the transaction is ratified. *Eberstein* v. *Willets,* 134 Ill. 101 (24 N. E. 967); *Myers* v. *Grey* (Sup.), 122 N. Y. Supp. 1079. Where a deed is alleged to have been executed under duress and is attempted to be set aside on that ground, the party so attempting to set aside the same must act promptly. If he remain silent for an unreasonable length of time, or recognize the validity of the contract, he will be held to have elected to waive the duress and ratify the contract. 10 Am. & Eng. Ency. Law (2 ed.), 337; *Myers* v. *Grey,* 122 N. Y. Supp. 1079; *Royal* v. *Goss,* 154 Ala. 117 (45 South. 231). Where there has been delay in bringing an action to set aside a deed on the ground of duress on the part of the party pleading duress, clear convincing evidence will be required to explain the failure to proceed. *Lyon* v. *Waldo,* 36 Mich. 345; *Eberstein* v. *Willets,* 134 Ill. 101 (24 N. E. 967)." *Guinn* v. *Sumpter Valley Ry. Co.,* 63 Or. 368 (127 Pac. 987).

8. Mrs. Levitt is not a party to this action nor is she herself asking for redress. She has never taken any steps to avoid her deed, and until she became a witness in this cause, by no act of hers has she ever

questioned its validity. She was at perfect liberty to ratify the deed, and after ratification, the defect was cured. Whether she has ratified the deed is a question personal to herself, which no one else can raise for her; for "duress, which will avoid a contract, must be offered to the party who seeks to take advantage of it." *Robinson* v. *Gould*, 11 Cush. (Mass). 55. The defense that Mrs. Levitt, by duress, joined in conveying her property and assigning an insurance policy is, therefore, not available to the defendants as a defense to this action.

9, 10. The trial court made no finding that the acts proved constituted duress as to the defendant Levitt. Hence that question is not here for decision and we shall give no consideration to it further than to quote, with approval, from 1 Page on Contracts (2 ed.), 495, as follows:

"If the person subjected to duress is thereby compelled to perform or agree to perform what he could have been compelled to do legally, such transaction or contract cannot be avoided for duress. Thus, if one who has injured another is compelled by duress to compensate to no greater extent than the law would have compelled him for such injury, as by giving to the person from whom he has embezzled a note to cover such embezzlement, no duress exists. * * But if the contract caused by threats of prosecution is not one of restitution, but is on some different subject matter, duress exists though the promisor is guilty."

11. The trial court found both as a fact and as a conclusion of law that the payments distributed among and credited upon the notes of the amount stipulated by Levitt and Latourette as the consideration to be allowed to Levitt for the transfer of tho property by Levitt and his wife were in no sense voluntarily made by the defendants, nor made by or under their direction, and that because thereof the

court concluded that these payments did not in any way affect the running of the statute against the notes. There was no evidence that these payments were not made under an agreement that they should be applied in part payment of the notes. On the contrary, the evidence is uncontradicted, and the whole evidence shows, that the agreement was that they should be applied as partial payments upon the notes. Levitt himself testified to that effect. There was, therefore, no evidence to sustain the finding, and the conclusion drawn by the court from the findings was erroneous. Levitt himself was a party to the deed, and his name appears upon the assignment of the policy. By his own act he procured the payment and the indorsement of it as a payment upon the notes. The payment was, therefore, made by him, and the indorsement was made under his direction. The finding of the court and the conclusion drawn therefrom were, therefore, both erroneous.

12. This action is not one for the enforcement of a contract entered into by duress. If it was, the plaintiffs could not recover. The notes sued on are entirely separate and distinct from the transaction complained of by the defendants. The amount represented by the notes is justly due from the defendants, and the validity of the notes and the indebtedness represented by them are not in any way affected by the invalidity of some other transaction between the parties, even though the proceeds of that transaction have been applied, by agreement of the parties, in partial payment of the notes. If the holders of the notes, after receiving this partial payment, had sued the defendants to recover for the full amount then due, without deducting the amount paid, the defendants would have had a perfect defense as to the amount so paid and not credited by proving the

facts established by the evidence in this cause. The transaction being voidable and not void as to the wife of the defendant Levitt and she never having exercised her option to avoid the deed and assignment, the transaction is a completed one, and the consideration for the transaction having been paid to the holders of the notes, it constituted payment as much so as if the transaction had been one against which no objection could be urged.

For these reasons the judgment of the lower court will be reversed and the cause remanded for further proceedings not inconsistent herewith.

REVERSED AND REMANDED.

BURNETT, BEAN and COSHOW, JJ., concur.