Argued December 2; affirmed December 30, 1932; rehearing denied February 14, 1933

## THIELSEN *v.* BLAKE, MOFFITT & TOWNE

(17 P. (2d) 560)

*Custer Ross,* of Salem (Senn & Recken, of Portland, on the brief), for appellant.

*Edgar Freed,* of Portland (Simon, Gearin, Humphreys & Freed and Nicholas Jaureguy, all of Portland, on the brief), for respondent.

KELLY, J. Plaintiff alleges that in order to induce him to enter into a contract whereby a partnership, in which plaintiff and Mr. Arthur Rahn were the partners, transferred its assets to the Rodgers Paper Company, a corporation, defendant Blake, Moffitt & Towne, a corporation, stated and represented to plaintiff that plaintiff should be retained as general manager of said

Rodgers Paper Company, a corporation, for the period of ten years from and after January 1, 1927, at a salary of $5,000 per year plus 10 per cent of the annual net earnings of said corporation, and that plaintiff should have the actual management of said corporation and be the general manager thereof; that by entering into said arrangement, the overhead expense of doing business of Rodgers Paper Company would be materially reduced in that defendant would place no salesman in the territory then being served by said partnership; that defendant would make prices to said corporation, Rodgers Paper Company, for stock at actual cost to defendant, plus 5 per cent, 7½ per cent or 10 per cent, depending upon the amount of goods ordered, and that said corporation, Rodgers Paper Company, should have the benefit of all mill contracts of defendant.

Plaintiff alleges facts to the effect that said representations were fraudulent and that, in consequence thereof, he sustained damages.

It is urged by defendant that the alleged agreement, whereby defendant and plaintiff stipulated that plaintiff should be retained as general manager of said corporation for a period of ten years at a fixed salary of $5,000 per annum and 10 per cent of the net earnings, is invalid because it is contrary to public policy.

Plaintiff asserts that public policy is not contravened by such an agreement, and in support of this assertion cites: *In re Will of Pittock,* 102 Or. 159, 177 (199 P. 633, 202 P. 216, 17 A. L. R. 218), and *Manson v. Curtis,* 223 N. Y. 313, 319 (119 N. E. 559, Ann. Cas. 1918E, 247).

In the first of these two cases, the testator, by the terms of his will, devised and bequeathed all of his estate to two trustees and provided that none of his

stock in The Oregonian Publishing Company, a corporation, should be sold, but should be held intact for twenty years; that said trustee should vote said stock in favor of themselves as directors of said corporation; and said testator also made the following provisions in his will:

"And it is my desire and I request that C. A. Morden shall be elected manager of The Oregonian and shall be retained as such, and that Edgar B. Piper shall be retained as managing editor of The Oregonian until he shall become incapacitated or until he may voluntarily resign".

In that case, this court, speaking through Mr. Chief Justice BURNETT, referred to and quoted from the second case last above cited, and then said:

"The vice upon which the court condemned the agreement in question consisted in the express stipulation that the president of the corporation should be only nominally so; that no interference with plaintiff's policy as manager should be tolerated; and that in effect the board of directors should be mere dummies, whereas the statute required that the affairs of the corporation should be controlled by the directors either in person or by subordinates under their authority. In the instant case the testator proposed to work out his policy by the legal election of directors by a majority of the stock which he himself owned and would have had a right to vote in that way without question if he had lived".

Again, in the Pittock case, it is said:

"All through the authorities cited by the petitioner runs the vein of pooling among a group of stockholders whereby they conspired either to seek some private advantage not common to other members of the corporation, or to pass the control of the concern to others than the directors in whom the statute vests the management".

And again,

"In the cases cited in support of the petitioner's contention there has always been some element of private personal gain to accrue to the contracting parties, not to be enjoined by other members of the corporation".

We quote the foregoing excerpts from the Pittock case because we think the distinction between that case and the cases cited by the petitioner therein is to be observed in the case at bar.

Here, by the terms of the alleged agreement, plaintiff should be retained as general manager of said Rodgers Paper Company, a corporation, for the period of ten years, and plaintiff should have the actual management of said corporation and be the general manager thereof. As we interpret this provision of the alleged contract, it would have the effect of passing the control of the concern to plaintiff and taking it from the directors in whom the statute vests the management. Section 25-213, Oregon Code 1930.

The increase in the sales of defendant, a corporation engaged in the wholesale paper business and payment to plaintiff of $5,000 per year and 10 per centum of the net profits for ten years present the element of private personal gain not enjoyed by other members of the corporation.

In reference to that point, we quote from the testimony of Mr. Rahn, who became a stockholder in the Rodgers Paper Company, a corporation, in like manner as plaintiff, namely, by a transfer of his interest in the copartnership of plaintiff and Rahn:

"Q. Did he (plaintiff) ever say whether or not he had a contract?

"A. Never mentioned contract to me. I didn't know anything about a contract. I presumed that he did have, but I certainly didn't know anything about it.

"Q. Well, in all this conversation with you by Mr. Thielsen at the time these negotiations were going on, in which he was stating to you, as his partner, that you ought to go into the arrangement, he never told you that he had a contract of employment—

"A. (Interrupting) As far as I know, no, he never did.

\* \* \* \* \*

"Q. Did you know how much Mr. Thielsen was getting, what salary he was getting as manager and president of the Rodgers Paper Company?

"A. I am sorry to say, I didn't.

"Q. You did not? A. I did not.

\* \* \* \* \*

"Q. How did you find it out?

"A. Looked through the books, asked the book-keeper.

\* \* \* \* \*

"Q. I wonder if you did anything about it, or said anything about it?

"A. Yes, I did, because I told Mr. Thielsen on account of his getting more money than I was that I should have the same salary he had, and he said he would go to Portland and take it up with Mr. Mielke and see whether it would be possible to increase my salary to the same as he was getting.

"Q. He didn't tell you he had a contract then?

"A. There was nothing said about a contract at any time that I know of.

"Q. You became dissatisfied with the arrangement, of which you were just learning, by which you were not getting the salary that Mr. Thielsen was getting?

"Well, that had some bearing on it, yes.

"Q. I am not speaking about what occurred later. You were dissatisfied with the situation.

"A. Yes, I was.

"Q. You felt you were entitled to more, or as much as he was entitled to, anyway?

"A. Correct".

The testimony, above quoted, discloses that Mr. Rahn, though a stockholder in the Rodgers Paper Company, a corporation, was not a party to the alleged agreement containing the representations upon which plaintiff bases his action, and that, upon learning of one of its alleged terms, Rahn deemed it inequitable and unfair.

■ We are not called upon to consider the provisions of a will, nor a contract assented to by all the stockholders. The purported contract in suit is one from which defendant derived a special benefit in that defendant would increase the sales of its products, and, as claimed by plaintiff, by the terms of the contract, unknown to one of the stockholders, plaintiff was to have the management of the corporation for ten years at a salary of $5,000 per year. Such contracts are held to be void as against public policy. *Van Slyke v. Andrews,* 146 Minn. 316 (178 N. W. 959, 12 A. L. R. 1068), and cases cited, pp. 1070, et seq; *Hellier v. Achorn,* 255 Mass. 273 (151 N. E. 305, 45 A. L. R. 788), and cases cited, pp. 795, et seq.

"The test of the validity of such agreements is not the existence of an agreement by stockholders to act together, but, whether the object with which the agreement is made or the acts that are done under it are such as will enable the stockholders acting in concert to work a fraud upon the other stockholders or to violate their rights". Vol. LXVI, No. 10, U. S. Law Review (October, 1932), p. 562 at p. 566, and cases there cited.

We do not mean to reflect in any way upon the actual intention of the plaintiff, in this case, whom the members of this court hold in high esteem, nevertheless, in our judgment, a ten-year term as manager of said corporation at the fixed salary of $5,000, and 10

per cent commission on net sales for that term would be a violation of the rights of any nonassenting stockholder, because it deprives such stockholder of the benefit of such flexibility as to salary and course of management as the best judgment of an unrestricted board of directors would dictate from year to year.

■ Such a contract cannot become the basis of an action of deceit. *Manson v. Curtis*, supra.

The judgment of the circuit court is affirmed.

BEAN, C. J., RAND and CAMPBELL, JJ., concur.