Argued and submitted October 22, 1982, resubmitted In Banc May 4, reversed and remanded August 10, reconsideration denied October 7, petition for review allowed November 1, 1983 (295 Or 840)
See 296 Or 639, 679 P2d 296 (1984)

# MOUNTAIN FIR LUMBER CO., INC.,
## *Appellant,*

*v.*

# EMPLOYEE BENEFITS INSURANCE CO.,
## *Respondent.*

## (No. A8005-02910, CA A22281)

667 P2d 567

G. Kenneth Shiroishi, Portland, argued the cause for appellant. With him on the briefs were Morrison, Dunn, Miller, Carney & Allen, Portland.

James N. Westwood, Portland, argued the cause for respondent. With him on the briefs were Fredric A. Yerke, Bruce A. Rubin, and Miller, Nash, Yerke, Wiener & Hager, Portland.

YOUNG, J.

Buttler, and Van Hoomissen, JJ, not participating.

Warden, J., dissenting.

### YOUNG, J.

Plaintiff seeks damages for defendant's failure to comply with an alleged agreement for the rebate of workers' compensation insurance premiums. Plaintiff appeals following the dismissal of its first and second amended complaints on the ground that plaintiff failed to state facts sufficient to constitute a claim. ORCP 21A. Plaintiff alleged claims for breach of contract, fraud (deceit), reformation and breach of the contract as reformed. Defendant argues that there can be no contract action, because the rebate agreement is an illegal contract under ORS 746.035 and ORS 746.045, and that there can be no fraud action, because there is no right to rely on an illegal promise. We find that plaintiff's amended complaint states viable claims, and we reverse.

■ Regarding the contract claim, there are two distinct inquiries: first, is the agreement unlawful and, second, if unlawful, is it unenforceable? We find the agreement to be unlawful. Plaintiff entered into an agreement with defendant to secure workers' compensation coverage for a three year period. Plaintiff claims that defendant breached an agreement to return to plaintiff a portion of its premiums according to a preestablished formula. Plaintiff alleged that the agreement, although not set forth in the policy, provided:

"1.  The cost to plaintiff of the described insurance coverage would be based upon a premium (to be called the 'earned premium') determined as the sum of:

"a.  20.7 % of the Standard Premium.

"b.  Claims paid plus a reserve for open claims, multiplied by a Loss Conversion Factor of 1.10.

"2.  Any amount of premium paid by plaintiff to defendant in excess of the above determined earned premium would be returned to plaintiff.

"3.  Defendant would return amounts paid by plaintiff in excess of the earned premium one year after the specific policy year. A final computation and return of unearned premium would occur one year after the expiration of the three year policy period."

The alleged agreement runs afoul of ORS 746.035 and 746.045. ORS 746.035 provides:

"Except as otherwise expressly provided by the Insurance Code, no person shall permit, offer to make or make any contract of insurance, or agreement as to such contract, unless all agreements or understandings by way of inducement are plainly expressed in the policy issued thereon."

ORS 746.045 provides:

"No person shall personally or otherwise offer, promise, allow, give, set off, pay or receive, directly or indirectly, any rebate of or rebate of part of the premium payable on an insurance policy or the agent's commission thereon, or earnings, profit, dividends or other benefit founded, arising, accruing or to accrue on or from the policy, or any other valuable consideration or inducement to or for insurance on any domestic risk, which is not specified in the policy." ORS 746.045.[1]

Because the alleged agreement is not specified in the policy, it is in violation of these statutes.[2]

Enforceability is a more difficult question. In *Hendrix v. McKee,* 281 Or 123, 128 575 P2d 134 (1978), the court observed:

"It is often stated that courts will not enforce 'illegal' contracts. This is an oversimplification of a legal principle, the

---

[1] Subsequent to the parties' agreement, the Insurance Division promulgated OAR 836-80-125, which prohibits an agreement to declare a dividend according to a preestablished formula:

"PROHIBITED REPRESENTATIONS REGARDING PARTICIPATION RIGHTS.

"Prior to the declaration of a dividend, an insurer shall not represent, orally or in writing, that the insurer agrees or will agree:

"(1) To pay a specified amount as a dividend; or

"(2) To a formula that fixes, or to factors that fix or can be used to fix:

"(a) The amount of a dividend;

"(b) The percentage of premium that will be paid as a dividend; or

"(c) The amount or percentage of premium to be retained by the insurer after payment of dividends."

[2] ORS 746.035 and ORS 746.045 do not prohibit dividends or rebates of insurance premiums. They only require that any such promises or agreements be expressed in the policy.

application of which often involves construction of statutes and contractual provisions, delineation and balancing of public policies, and a difficult sorting and sifting process."[3]

Because it is the legislature's prohibition that makes the agreement unlawful, the inquiry into enforceability begins with legislative intent. This is particularly so in the case of a regulatory statute. The question becomes: Did the legislature intend that a rebate agreement be void and unenforceable? *Uhlmann v. Kin Daw,* 97 Or 681, 193 P 435 (1920), explained the approach:

"* * * [U]pon finding a statute with either a penalty or a prohibition, or both, the court is not immediately debarred from further prosecuting an inquiry as to whether the agreement is void and unenforceable in a court of justice: *Harris v. Runnels,* 12 How 79, 84 (13 L Ed 901, * * *). The inquiry is as to the legislative intent, and that may be ascertained, not only by an examination of the express terms of the statute, but it may also be implied from the several provisions of the enactment. Of course, if a statute expressly declares that an agreement made in contravention of it is void, then the inquiry is at an end; but, in the absence of such a declaration, the court may take the statute by its four corners and carefully consider the terms of the statute, its object, the evil it was enacted to remedy, and the effect of holding agreements in violation of it void, for the purpose of ascertaining whether it was the legislative intent to make such agreements void; and if from all these considerations it is manifest that the lawmakers had no such intention, the agreements should be held to be legal contracts and enforceable as such. 97 Or at 689-90.[4] (Citations omitted.)

---

[3] Although it might have been sufficient in *Hendrix,* a case involving the social and moral overtones of gambling, to conclude that the agreement is contrary to public policy on its face and therefore void, such a response is not adequate when applied to statutes regulating insurance. What is required here is that difficult inquiry into enforceability based on a construction of the statutes and delineation of public policies.

[4] Professor Corbin states:

"There are many varieties and degrees of 'illegality.' These varieties and degrees must be taken into account in determining the juristic effect of a transaction that involves some form of illegality. It is far from correct to say that an illegal bargain is necessarily 'void,' or that the law will grant no remedy and will always leave the parties to such a bargain where it finds them. Such general statements are indeed found in great number, faithfully reprinted in long columns of digest paragraphs; they render only a wearisome disservice when repeated with no reference to the facts of the cases in which they have been made. Before granting or refusing a remedy, the courts have always considered the degree by the offense [sic], the extent of public harm that may be involved, and the moral quality of the conduct of the parties in the light of the prevailing mores and standards of the community." 6A Corbin, Contracts § 1534 (1962).

■　　We find that the legislature did not intend to make a rebate agreement unenforceable.[5] The insurance statutes do not declare a rebate agreement void or unenforceable. *See* ORS 746.035; 746.045. Instead, the legislature has given the Commissioner broad powers of investigation and an array of sanctions, including cease and desist orders (ORS 731.252), suspension of certificates of authority (ORS 731.418; 731.426), revocation of certificates of authority (ORS 731.418), civil penalties, civil forfeitures and fines (ORS 731.988).[6] The statutory design is that the contract should remain enforceable, while the parties become subject to appropriate sanctions imposed by the commissioner. *Seal v. Polehn,* 52 Or App 389, 628 P2d 746, *rev den* 291 Or 368 (1981);[7] *Hall v. Metropolitan*

---

In a case involving California's more stringent anti-rebate statutes, Cal. Ins. Code §§ 750, 751, 752, a California court put it this way:

"* * * [T]he effect of illegality on the enforceability of an agreement depends on the facts and circumstances of the particular case including the kind and degree of illegality involved, the public policy or policies to be served, whether those public policies will best be served by enforcing the agreement or denying enforcement and the relative culpability and equities of the parties.

"* * * * *

"Among the specific facts frequently considered by courts are whether the violation of law involved serious moral turpitude, whether the parties are not entirely in pari delicto, whether the adverse party would be unjustly enriched if enforcement were denied, whether the forfeiture resulting from denial of enforcement would be disproportionately harsh in proportion to the illegality and whether the purpose of the statute violated will best be served by enforcement or denial of enforcement." *Homestead Supplies, Inc. v. Exec. Life Ins. Co.,* 81 Cal App 3d 978, 147 Cal Rptr 22, 27-29 (1978). (Citation omitted.)

[5] The only pertinent legislative history is the repeal of the "policyholder penalty." Under prior statutes, a policyholder who received a rebate could be sanctioned by a proportionate reduction in insurance coverage. ORS 736.625, (repealed by Or Laws 1967, ch 359, § 704). Although the original draft of the proposed revision of the insurance code would have continued the penalty, *Preliminary Draft of the Advisory Committee on Insurance Law Revision,* Section 8-8 at 486 (Sept. 1966), during subsequent hearings of the Law Improvement Committee and Advisory Committee on Insurance Law Revision, the penalty was deleted. Insurance Law Revision Bulletin, Feb 23, 1967, at 8 ("Policyholder penalty deleted"). The existing statute was then enacted without the proportionate reduction in coverage for acceptance of a rebate. *See* Or Laws 1967, ch 359, §§ 570-571.

[6] *See also* ORS 731.232 (subpena power), ORS 731.236 (general powers), ORS 731.232 (enforcement generally), ORS 731.258 (enforcement through attorney general), ORS 731.288 (considering complaints before issuing license), ORS 731.296 (Commissioner's inquiries), ORS 731.300 (examination of persons transacting insurance) and ORS 731.308 (examination of books and records).

[7] A good example of the enforceability analysis is *Seal v. Polehn,* 52 Or App 389, 628 P2d 746, *rev den* 291 Or 368 (1981), involving a regulatory statute, ORS 92.325(1),

*Co.,* 146 Or 32, 28 P2d 875 (1934). This view of the regulatory scheme permits greater flexibility in responding to violations.

By contrast, the refusal to enforce the contract would be a heavy-handed sanction, not provided by the legislature. It would be wielded, not by the commissioner, but by a court blind to the subtleties of insurance regulation and the nature of the particular violation. A policyholder, unschooled in the intricacies of insurance regulation, could be exploited by an unprincipled insurer, while the insurer would profit from its own violation of the law.[8] This would not be consistent with the purpose of the Insurance Code, which is to protect the insurance-buying public. *See* ORS 731.008. Thus, in the light of the statutory design and the dangers of a judicially created sanction, we hold that the alleged rebate agreement is enforceable by the policyholder. The trial court erred by dismissing the contract claim.

■ Plaintiff sought reformation of the written policy to include the rebate agreement and for damages for breach of the policy as reformed. The trial court dismissed this claim on the apparent ground that equity would not reform or enforce a contract where the reformed contract would be unlawful and unenforceable. Because the contract is enforceable, as discussed above, dismissal of this claim was error.

Plaintiff also brought two fraud claims. Plaintiff alleged that defendant had falsely represented that the cost of insurance would be computed according to a predetermined formula and that a sum determined from the formula would be

---

that provides that no one shall sell or lease subdivided land without having complied with all applicable provisions including registration with the county and state. The earnest money agreement at issue provided for the sale of unregistered lots and was therefore unlawful. The court noted that the statute did not expressly declare unlawful agreements unenforceable. The statutory scheme provided the Real Estate Commissioner with various sanctions. Given the statutory scheme and its purpose of protecting the public, the court found the unlawful agreement to be enforceable by the purchasers. The court granted specific performance compelling the unlawful act of selling unregistered properties. *Seal v. Polehn, supra.*

[8] It is small comfort to the policyholder that his contractual bargain could be lost to the state's general fund if the Commissioner should choose to bring forfeiture proceedings against the insurer. ORS 731.988.

returned to plaintiff.[9] The trial court dismissed both fraud claims for failure to state a cause of action, ORCP 21A, on the basis of defendant's contention that there was no "right to rely" on an "illegal promise."

■■ In general, an action for fraud can be brought when the promisor made promises that it did not intend to perform or with reckless disregard for whether it could perform. *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 546 P2d 1065 (1976); *Elizaga v. Kaiser Found, Hospitals,* 259 Or 542, 487 P2d 870 (1971). A fraud claim can be maintained even if the same set of facts give rise to a contract action, and even if the contract is unenforceable. Restatement (Second) of Torts § 530, comment c (1976).[10] Prosser explains:

> "* * * The question frequently arises whether the action for misrepresentation can be maintained when the promise itself cannot be enforced *as where it* is without consideration, *is illegal,* is barred by the statute of frauds, or the statute of limitations, or falls within the parol evidence rule, or a disclaimer of representations.
>
> "One group of cases, undoubtedly in the minority, have held that it cannot, arguing that to allow the action would be to permit an evasion of the particular rule of law which makes the promise unenforceable, or that the promisee must be deemed to know the law, and must be held not to have been deceived by such a promise. The prevailing view, however, permits the action to be maintained, considering that the policy which invalidates the promise is not directed at cases of dishonesty in making it, and that it may still reasonably be relied on even where it cannot be enforced. * * * *[T]he tendency is clearly to treat the misrepresentation action as a separate matter from the contract."* Prosser on Torts § 109 at 729-30 (4th ed 1971). (Footnotes omitted; emphasis supplied.)

---

[9] In the first fraud claim plaintiff sought damages equal to the promised rebates ($257,762), plus $1,000,000 punitive damages. In its second, alternative fraud claim, plaintiff alleged the same facts and added that defendants had by their representations induced plaintiff to change its insurance coverage from the State Accident Insurance Fund (SAIF) to defendant. In the second claim plaintiff sought damages equal to the difference between defendants more costly insurance and SAIF's less expensive insurance ($555,558), plus $1,000,000 punitive damages.

[10] The public policy considerations that might render a contract void and unenforceable shift when fraud is added to the bargain. The common law has always abhorred fraud; and so, too, does the Insurance Code. *See* ORS 731.418(1)(b); 746.075; 746.110; and 746.240.

Oregon adheres to the majority view. For example, in *Burgdorfer v. Theilemann*, 153 Or 354, 55 P2d 1122 (1936), the court held that a promise unenforceable due to the statute of frauds was nevertheless actionable in deceit. In *Meyer v. Barde*, 112 Or 197, 228 P 121 (1924), the court described certain payments as an illegal and unenforceable transaction whose object was to stifle a criminal prosecution. The court noted, however, that the payor could recover the payments because she had acted under duress. Although the case presented a different issue, the court observed:

"* * * The illegal and void contract having been fully executed, neither party to it can recover back money paid or property transferred in the execution of the illegal and void contract *unless the money or property was obtained from such a party by fraud, mistake or duress.*" 112 Or at 211. (Citation omitted; emphasis supplied.)

In a case similar to the one at hand, a California court permitted a policyholder to bring a deceit action for an insurer's fraudulent and illegal promises to rebate workers' compensation insurance premiums. Following the majority position described by Prosser, the court said:

"* * * Plaintiff is not seeking to enforce an illegal contract, but rather to recover damages suffered when defendants fraudulently induced it to enter into the illegal transaction.

"* * * [P]laintiff's complaint sounds in tort rather than contract * * *. * * * [I]t adequately states a cause of action for fraud and deceit." *R. D. Reeder Lathing Co., Inc. v. Cypress Ins. Co.,* 3 Cal App 995, 84 Cal Rptr 98, 100 (1970).

We agree that deceit is a legal wrong separate and distinct from breach of contract. *See Prosser on Torts* § 109; Restatement (Second) of Torts § 530, comment c (1976). An aggrieved party's ability to bring a fraud claim does not hinge on whether the promise coincides or conflicts with a statute. The relevant question in tort analysis is whether, given the particular facts of the case, the plaintiff relied on the fraudulent promise. *See Outcault Advertising Co. v. Jones,* 119 Or 214, 234 P 269, 239 P 1113 (1922).

Plaintiff, whom we *must* regard as an innocent policyholder, should be permitted to prove that it relied on and was induced by defendant's alleged false and misleading representations. Permitting plaintiff to bring an action for fraud is consistent with the rebate statute.

"* * * [B]y imposing damages upon defendants, the sales argument by insurance companies of what to them are known to be illegal rebate plans to attract new customers would be discouraged. The purpose of the law would be served rather than frustrated." *R.D. Reeder Lathing Co., Inc. v. Cypress Ins. Co., supra,* 84 Cal Rptr at 101.

The law will not shelter the insurer with a defense built of the insurer's own wrong-doing, nor will the law deny a policyholder the opportunity to seek relief for damages resulting from the insurer's deceit. The trial court erred by dismissing the fraud claims.

Reversed and remanded.

**WARDEN, J.,** dissenting.

Because I am satisfied that the trial court did not err in finding the parties' agreement to refund to plaintiff a portion of the premium it paid for workers' compensation insurance to be illegal and therefore unenforceable, I am unable to join the majority. Therefore, I dissent.

The parties' rebate agreement clearly violates ORS 746.035 and ORS 746.045, because it is not included in the policy of insurance. The majority, however, although it recognizes the agreement's illegality, finds it enforceable. In doing so, the majority quotes from *Hendrix v. McKee,* 281 Or 123, 128, 575 P2d 134 (1978):

"It is often stated that courts will not enforce 'illegal' contracts. This is an oversimplification of a legal principle, the application of which often involves construction of statutes and contractual provisions, delineation and balancing of public policies, and a difficult sorting and sifting process."

No mention is made by the majority of the first sentence of the paragraph immediately following the above quoted language in *Hendrix.* It says:

*"If* the consideration for the contract or *its agreed purpose is illegal or against public policy on its face, it will not be enforced."* 281 Or at 128. (Emphasis supplied.)

Defendant agreed to a rebate of a portion of the premiums paid by plaintiff; plaintiff agreed to receive the rebate. Those terms were not set out in the written contract of insurance. On its face, the agreed purpose is illegal as clearly violating ORS 746.035 and ORS 746.045. It is also against the public

policy embodied in those statutes. Under the rule stated in *Hendrix*, it is not enforceable.

The majority, in quoting from *Uhlmann v. Kin Daw*, 97 Or 681, 689, 193 P 435 (1920), again omits a significant sentence, which immediately proceeds the quoted portion:

> "If a statute having a penalty and a prohibition, express or implied, or only a penalty or only a prohibition, is silent and otherwise contains nothing from which the contrary is to be inferred, then an agreement which conflicts with the statute is void."

ORS 746.035 and 746.045 expressly prohibit making agreements such as plaintiff seeks to enforce and, as the majority amply points out, ORS chapter 731 provides a variety of penalties for violations. ORS 746.035 and 746.045 are silent as to whether an agreement in conflict with them is void, and I find nothing from which it may be inferred that such an agreement is not void. The majority draws an inference from the wide variety of sanctions and penalties available to the Insurance Commissioner in ORS chapter 731. In other words, it infers from the fact that there *are* penalties that the agreement is not void and therefore unenforceable. Making that inference is directly contrary to the rule in *Uhlmann*, the case on which the majority purports to rely, which is that an agreement in violation of a statute is void if the statute *has* a penalty or prohibition, unless the statute says that it is not or contains something from which it may be inferred that it is not.

In *Uhlmann* the defendant sought to abate the foreclosure of a mortgage on the ground that the plaintiffs had failed to file an assumed name certificate in the county in which the mortgage was executed prior to its execution. The statute involved prohibited conducting business under an assumed name unless a certificate setting forth the true and real name or names of the party or parties conducting the business had been filed in the office of the county clerk of the county in which the business was to be conducted. The statute further provided that such persons were not entitled to maintain any suit or action without alleging and proving that an assumed name certificate had been filed. The plaintiffs in *Uhlmann* had filed an assumed business name certificate after the mortgage was executed but before bringing suit to foreclose it.

The Supreme Court, in finding that plaintiff's failure to file the assumed name certificate before the mortgage was executed did not render the mortgage void, said:

"Our conclusion is that failure to file the certificate affects only the qualification of the person to sue, and that upon filing a certificate the disqualification is removed, and a suit or action may be maintained on a contract made before or after such filing." 97 Or at 695.

The court, in discussing legislative intent, said:

"Here the primary purpose is, not to prevent business, but to require the performance of a statutory duty which is entirely collateral to any agreement that may arise out of any business transaction." 97 Or at 692-93.

Clearly, the statute involved in *Uhlmann* did not prohibit the making of mortgage contracts, but, as construed by the court, merely affected the capacity of parties to sue.

The purpose of the statute in this case is quite different. It does not require the performance of the statutory duty which is collateral to the agreement involved but prohibits the making of the very agreement that plaintiff seeks to enforce. The majority states, "[T]he insurance statutes do not declare a rebate agreement void or unenforceable." *But see* ORS 746.035; 746.045. How much more clearly must the legislature speak? That the making of "under the counter" rebate agreements like the one plaintiff seeks to enforce is clearly prohibited by those statutory sections makes it clear enough that the legislature meant to allow no effect to be given rebate agreements, unless they were part of the form of the insurance policies which the legislature required to be submitted to the Insurance Commissioner for his approval or disapproval pursuant to ORS 743.006 and 743.009.

Interestingly, the majority makes no mention of *Hunter v. Cunning,* 176 Or 250, 154 P2d 562, 157 P2d 510 (1945). In that case, the defendant was the personal representative of a Mrs. Wells who, with her husband, had entered into a written agreement employing the plaintiff to procure a purchaser for her timber lands and agreed to pay him a commission of 5 percent. Plaintiff found a purchaser and transmitted the offer of purchase to Mrs. Wells and her husband, who

rejected it. Mrs. Wells and her husband continued negotiations with the purchaser and, in fact, completed the sale. In *Hunter*

> "[t]he sale was consummated solely through the employment and efforts of Hunter as the procuring cause thereof, and he fully performed his contract of employment, except that Mrs. Wells, in an effort to escape payment of Hunter's commission, prevented him from fully consummating the sale, by pretending to reject the offer obtained by him, and secretly, without his knowledge, effecting a sale of the property to [the purchaser procured by Hunter]." 176 Or at 253.

Hunter brought the action for his commission. During the trial, defendant moved for a directed verdict on the ground that the plaintiff was not a licensed real estate broker during the time that he was carrying on negotiations for the sale. The motion was overruled, and the plaintiff recovered judgment. On appeal, the judgment of the trial court was reversed, the Supreme Court holding that the motion for directed verdict should have been sustained, because the plaintiff had procured the purchaser three days before he had secured his broker's license.

In *Hunter,* the respondent relied heavily on *Uhlmann v. Kin Daw, supra,* much as the majority does in this case. The Supreme Court carefully analyzed *Uhlmann* and distinguished it, stating "that the rule, which avoids a contract made in contravention of a statute, will *always* be applied when the statute is intended for the protection of the public against those evils which we know from experience society must be guarded against by protective legislation." 176 Or at 287. The statute in this case is just such a statute. The majority recognizes that the statute has such a purpose but mistakenly uses that as a reason for holding the illegal agreement to be enforceable. Citing ORS 731.008, it proclaims that to hold the agreement of these parties to be unenforceable "would not be consistent with the purpose of the Insurance Code, which is to protect the insurance-buying public." How strange! It is for precisely that reason that the agreement should be held unenforceable, because one of the very clear purposes of ORS 743.035 and 743.045 is to prevent a party, such as this plaintiff, from securing an advantage in rates that is not available to members of "the insurance-buying public."

Because I would find the contract unenforceable, I would also affirm the trial court's dismissal of plaintiff's claim for reformation.

Because the majority finds this agreement enforceable, it says it was error to dismiss plaintiff's fraud claims. But a contract such as this, being void as against public policy, cannot serve as a basis for an action for deceit. *Thielsen v. Blake, Moffitt & Towne,* 142 Or 59, 65, 17 P2d 560 (1933).

As the majority recognizes, "the legislature has given the Commissioner broad powers of investigation and an array of sanctions." Included are those contained in ORS 731.988. ORS 731.988(1) provides for civil penalties to be paid to the general fund of the state by "any person who violates any provision of the Insurance Code" in an amount to be determined by the Commissioner and sets limits on the amounts thereof. ORS 731.988(2) provides:

> "In addition to the civil penalty set forth in subsection (1) of this section, any person who violates any provision of the Insurance Code * * * may be required to forfeit and pay to the General Fund of the State Treasury a civil penalty in an amount determined by the commissioner but not to exceed the amount by which such person profited in any transaction which violates any such provision * * *."

We would do better to let the Commissioner, who is charged with the duty to regulate rebates, apply his expertise to determine, what, if any, sanctions are necessary to protect the insurance-buying public. That is his work.

The trial court did not err and should be affirmed.

I respectfully dissent.

Gillette and Warren, JJ, join in this dissent.